[L. A. No. 817.    Department Two. — September 6, 1901.]

## CARLETON W. MILLER, Respondent, v. E. A. FANO et al., Appellants.

FALSE IMPRISONMENT— MISTAKEN IDENTITY — IDENTIFYING PERSON NOT LIABLE. — One who, without malice, but acting under an honest mistake as to the identity of a party, erroneously identifies such person to an arresting officer, who thereupon takes him into custody, is not liable for the false imprisonment, if he in no other manner either aided or assisted in the wrongful arrest, or directed, requested, or advised the officer to make it.

ID. — LIABILITY OF ARRESTING OFFICER— CARELESS ARREST OF INNOCENT PERSON. — A police-officer who makes an arrest must use prudence and diligence to find out if the party arrested is the party described in his warrant, and if he willfully or carelessly arrests an innocent party, he is liable for false imprisonment.

ID. — EVIDENCE— CIRCUMSTANCES OF UNLAWFUL IMPRISONMENT. — In an action for such false imprisonment, all the facts and circumstances

connected with his unlawful imprisonment, including his treatment while in the custody of other police officials, to whom he had been surrendered, are admissible in evidence.

APPEAL from a judgment of the Superior Court of San Diego County and from an order denying a new trial. J. W. Hughes, Judge.

The facts are stated in the opinion of the court.

Frederick W. Stearns, for Appellants.

McNealy & Andrews, for Respondent.

THE COURT.— This action was brought to recover damages for false imprisonment. The court filed findings, and ordered judgment for plaintiff for the sum of fifteen hundred dollars. The defendants appeal from the judgment and from an order denying their motion for a new trial. It is claimed — and we think correctly — that the evidence is insufficient to sustain the findings, in so far as they find that defendant Fano arrested or imprisoned the plaintiff. There is no evidence to show that defendant Fano advised or participated in the arrest or imprisonment of plaintiff.

False imprisonment is the unlawful arrest or detention of a person without warrant, or by an illegal warrant, or a warrant illegally executed, and either in a prison or place used temporarily for that purpose, or by force and constraint without confinement. It is not claimed that Fano was an officer, or that he made the arrest personally, or that he personally imprisoned the plaintiff or deprived him of his liberty. It is, however, claimed that by his acts and conduct he assisted defendant Place in the unlawful arrest and imprisonment. If a party authorizes, encourages, directs, or assists an officer to do an unlawful act, or procures an unlawful arrest without process, or participates in the unlawful arrest or imprisonment, such party is liable. With these definitions in view, the facts as to defendant Fano may be briefly stated as follows: He resided in the city of San Diego in the year 1898, and was manager for the firm of "S. H. Moll & Co.," engaged in the business of buying and selling railroad tickets. After buying such tickets — particularly to Eastern points — he was in the habit of dealing with one Lehman, of Los Angeles, to whom he would resell the tickets. He bought three tickets at one time, and sent them to

Lehman.  After sending them, he received from Lehman the following letter:—

"Los Angeles, Cal., August 13, 1898.

"Mr. E. A. Fano, San Diego, Cal.

"*Dear Sir*,—I just received your letter inclosing the two Phœnix tickets, and one for Jerome Junction, Arizona.  The ticket reading to Jerome belongs to me, as you will see by the inclosed receipt.  What did you pay for this ticket?  When did you buy it?  Give me a description of the man that sold it to you.  I have swore out a warrant for his arrest.  See if you can locate him.  Be sure and send back this receipt in your next letter, as I must have it in evidence.  Let me hear from you by return mail.  Will send draft when I get an answer to this.                    Yours very truly,

"C. J. Lehman."

About the 20th of August, defendant Place received a telegram from one Johnston, a constable of Los Angeles, in substance as follows: "Arrest Frank L. Kuhn.  See Fano, a broker, number 735 Fifth Street, for information."  After the receipt of the above telegram, Place went to see defendant Fano and showed him the telegram.  Fano told Place that a party had been in his place of business and sold him the ticket, and when asked for a description of the party, Fano said that he was not good at giving descriptions, but that he thought he would know the party if he should see him on the street.  Some days afterwards, and about the seventh day of September, 1898, Place met Fano in front of the Express Block, on F Street, and Fano told him that he thought the party was over in Hirschler's store.  After Fano went across the street to Hirschler's store, he came back, and, the defendant Place testified, "he identified Mr. Miller to me, as I understood it, as the man I wanted to arrest."  Place further testified that after he arrested plaintiff he took him to Fano's store, and Fano said, "That is the man," or "That is the man I sold a ticket to."  "I asked Mr. Fano, I says, 'Mr. Fano, is this the man that I want?' and Mr. Fano said something about the party that had been in there and sold him a ticket, or the ticket, or something.  I know the ticket proposition came in at that time, and he turned around and asked the boy in the store, and the boy says 'yes.' He turned to the boy, and asked the boy, and says, 'This is him, is n't it?' or 'This is the man?' or something of that kind,

and the boy said 'yes.' That was all Mr. Fano had to do with it. . . . I arrested him upon the strength of the telegram I had from Los Angeles; that is what I went on as my authority for making the arrest."

The witness Price—the boy referred to as being in Fano's store—testified: "Mr. Place brought the man in, and he says, 'Is this the man?' Mr. Fano says, 'He looks like a man who sold us a railroad ticket.' Mr. Fano asked me what I thought of it, and I told him 'yes'; I thought the same as he."

Defendant Fano testified, that after Place came to him and showed him the telegram, that he saw plaintiff, and believed him to be the man who sold him the railroad ticket; but he testified: "I never identified Mr. Miller as Mr. Kuhn. No, sir; there was no name mentioned of anybody in all the dealings of the whole thing; there was no name at all mentioned. I said, 'There is the man that sold me a railroad ticket'; that was the only answer."

The plaintiff testified as to being taken by Place to Fano's store, and "Mr. Fano was sitting there, and Mr. Place said, 'Is this the man that sold you that ticket?' Mr. Fano said, 'Yes; that is the man'; . . . 'you are the man'; and he turned and said to his clerk, 'Ain't he?' and the clerk kind of grinned, and said, 'I guess you are right.' I says, 'You are mistaken.'"

The above is all the evidence in any way tending to connect Fano with the transaction. It does not appear that he had any malice toward plaintiff, or that he even desired his arrest. He never counseled it in any way or manner. It does not appear that he knew Kuhn, the man named in the telegram. He certainly believed plaintiff to be a man who had sold him a railroad ticket. He told plaintiff so, and asked his clerk if plaintiff was not the man, in the presence of plaintiff. The clerk also thought so. As to whether the identification was sufficient to justify Place in arresting plaintiff, seems not to have concerned Fano. The identification might have been one of the causes, or the principal cause, of the arrest, but it does not follow that Fano aided or abetted in the wrongful act of Place. If Fano had known nothing at all about any intention on the part of Place to arrest plaintiff, and had identified him precisely as he did, such identification might have caused the arrest, but surely it could not be contended that, under such circumstances, Fano would be guilty of false imprisonment. It is the duty of every citizen, when called upon, to give all in-

formation in his possession to the proper officers of the law as to persons connected with crimes. No doubt, if a person should willfully identify the wrong man as being the criminal, for the purpose of having him arrested and prosecuted, and on such identification he should be arrested, such person would aid and assist in the arrest. But it would be a hard and unjust law that would hold a party responsible in damages for false imprisonment for an honest mistake as to the identity of a party.

It is said by Newell, in his work on Malicious Prosecution (sec. 8, p. 108), "It is only where the party himself orders or encourages lawlessness that he can be treated as a joint wrong-doer, because he is actually a trespasser, and is liable to the extent of his own misconduct."

In the case of *Hopkins* v. *Crowe*, 7 Car. & P. 373, it was said by Lord Denman: "If the defendant directed the police-officer to take the plaintiff into custody, he is liable in the present action for false imprisonment; but if he merely made his statement to the constable, leaving it with the constable to act or not, as he thought proper,—that is, if the defendant, in effect, said, 'You may take him if you think proper,'—then the defendant will not be liable, at least not in this form of action. Police-officers are quite wrong to take a person into custody, merely because another says, 'He has cruelly used my horse.' They should either inquire into all the particulars, or else they should see the animal, so as to form a judgment as to what has occurred."

So where a joint defendant appeared to have disclosed to the officer what he knew, and expressed an opinion that there was enough of suspicion against the defendant to have her examined, he was held not liable. (*Burns* v. *Erben*, 26 How. Pr. 276; 40 N. Y. 466.) In the opinion this language is used: "He did not request or urge any arrest, but left it to the officer at the station-house to decide on its propriety. Nor did he make any charge. Such officer appeared to exercise the authority given him by law of arresting persons that he suspected."

In a late case (*Joske* v. *Irvine*, 91 Tex. 574), the supreme court of Texas appears to have carefully considered the question. A merchant had requested a policeman to · trace his goods, for which his delivery-man had failed to account, and had threatened to make an affidavit against the delivery-man.

The policeman, immediately after the talk with the merchant, arrested the delivery-man without warrant. It was held that the merchant was not liable for false imprisonment. In speaking of what Joske, the merchant, had done and said, the court used this language: "We are of the opinion that from the mere exercise of this right the law will not permit the inference to be drawn that he 'requested or directed' the arrest, though it be conceded that but for its exercise the arrest would never have been made." To the same effect are *Veneman* v. *Jones*, 118 Ind. 45;[1] *Linnen* v. *Banfield*, 114 Mich. 93; *Murphy* v. *Walters*, 34 Mich. 180; *Teal* v. *Fissel*, 28 Fed. Rep. 351.

The court, in finding 7, finds that at the time of the arrest "the defendant Fano and his clerk fully identified plaintiff as Frank L. Kuhn." This finding is not only without support in the evidence, but is contrary thereto. Fano says that he never identified plaintiff as Frank L. Kuhn. It does not appear that Fano ever knew any one by the name of Frank L. Kuhn. Counsel contends that that part of finding 11 to the effect that the arrest of plaintiff and his subsequent imprisonment was willfully done by defendant is without support in the evidence. This contention is true, from what has been said, as to defendant Fano, but there is evidence to sustain the finding as to defendant Place. He was an officer of the law. He made the arrest without legal warrant. When plaintiff was arrested he promptly gave Place his true name and his business-card, told him how he came to San Diego, the hotel at which he registered, and the date. He also told him that he had long been in the service of the revenue department at San Francisco, and that Ned Taylor, who lived in San Diego, had known him for over thirty years. Place had known Taylor for several years, but did not take the trouble to look him up, so as to see whether or not he was arresting an innocent man. Plaintiff also told Place of a carpenter by the name of Brewer who knew him, but no attempt was made to find Brewer. Place, without seeking further information as to plaintiff, — in fact, ignoring the statements of plaintiff, — telegraphed to Los Angeles that "he had secured the man he was seeking." He then took plaintiff to the county jail and delivered him over to the jailer, where he was searched, deprived of his watch and his money. After staying in the county jail

[1] 10 Am. St. Rep. 100.

all night, the defendant Place, on the next morning, delivered plaintiff to the deputy constable from Los Angeles, to which place plaintiff was taken. And this, notwithstanding the fact that Taylor had seen Place and said to him: "Harry, you have made a mistake here; this is my old friend Carleton Miller. I have known him over thirty years." This evidence shows such gross carelessness and disregard of plaintiff's rights, that it fully justified the finding as to Place. An officer of the law has a duty to perform in making an arrest. He also owes a duty to the public, and to the party about to be arrested. He should use prudence and diligence to find out if the party arrested is the party described in his warrant. If, in his zeal, he willfully or carelessly arrests an innocent party, he should be made to suffer the consequences.

Testimony was admitted, under the objections of defendants, as to the imprisonment of plaintiff in Los Angeles, and his treatment in jail at that place; that he was confined with persons charged with crime, and compelled to sleep in a bed without adequate clothing. We think the testimony was proper. It was the probable consequence of the unlawful arrest by Place. He placed plaintiff in the custody of the Los Angeles officials as being the party named in the telegram; and all the facts and circumstances connected with his unlawful imprisonment were admissible in evidence. (3 Sutherland on Damages, 2d ed., sec. 1257; *Abrahams* v. *Cooper*, 81 Pa. St. 232; *Fenelon* v. *Butts*, 53 Wis. 349; *Kindred* v. *Stitt*, 51 Ill. 408; *McCall* v. *McDowell*, 1 Abb. 214.)

Certain rulings are complained of in regard to questions asked of the defendant Place. It is claimed that the evidence was not competent as to defendant Fano. From what has been said as to the evidence, it becomes unnecessary to pass upon the questions. The same may be said in regard to the motions to strike out certain evidence. We find no error in the admission of evidence as to defendant Place that would justify a reversal of the case as to him.

The judgment and order are reversed as to defendant Fano and affirmed as to defendant Place.