[Civ. No. 16720.   Second Dist., Div. Three.   May 19, 1949.]

MORLEY B. TURNER et al., Minors, etc., Respondents, v.
SIDNEY N. ELLIOTT et al., Appellants.

Spray, Davis & Gould for Appellants.

Edison J. Demler for Respondents.

SHINN, P. J.—Sidney N. Elliott and Frank Riga, Jr., appeal from judgments on verdicts which awarded plaintiffs damages for false imprisonment, namely, to Bob L. Butcher $1,000, to George Moore $1,000, and to Morley B. Turner $1,200. Two grounds of appeal are urged by appellants, namely, that the evidence was insufficient to prove that either of the appellants was responsible for the arrests of plaintiffs, and that the amounts of the verdicts were excessive.

There was evidence which the jury could reasonably have deemed sufficient to establish the following facts: On January 21, 1947, at about 7 o'clock p. m., two men committed a robbery in the liquor store of the defendants. At the point of guns they took from defendant Elliott, who was alone in the store, liquor of the value of about $97. The three plaintiffs, who were all 21 years of age at the time of trial, were residents of Long Beach; during the evening they had attended a meeting of an ex-servicemen's club and had been in the company of numerous friends until about 10 o'clock p. m., when they went to a bowling alley where Turner expected to meet someone to discuss a matter of business. Defendant Elliott also was at the bowling alley, observed Butcher and Moore for a time and then spoke with one Murphy, pointing out Butcher and Moore, stating they looked like the men who committed the robbery. At Elliott's suggestion Murphy called the police who arrived in six police cars, armed with revolvers and sawed-off shotguns. Elliott met the officers, conversed with them, and pointed out Butcher and Moore by walking to where they were sitting and standing directly behind them, saying: "These are the boys" or "these are the men." The two plaintiffs were ordered to stand up and raise their hands; their clothing was searched and they were handcuffed with their hands behind their backs. As they were being taken to the police cars plaintiff Turner approached the officers and stated that he knew Butcher and Moore and had been with them during the evening, whereupon Elliott directed the officers to take Turner along, saying: "He may be one of them." Turner was then handcuffed

in like manner and the three plaintiffs were shoved into the police cars. In the meantime, a crowd of some 200 persons had gathered, and when someone asked what the arrest was for one of the officers replied that they were a couple of robbers who had just stuck up a place. Butcher then asked one of the officers: ''What in the world we done anyhow, what's it all about?'' and the officer told him to shut his g—— d—— mouth or he would shut it for him. Newspaper photographers were in the crowd in front of the bowling alley and took flashlight pictures of the boys as they were led to the cars by the officers. Elliott accompanied them to the police station where the boys were questioned. One of the officers stated in the presence of Elliott that he (Elliott) was positive in his identification of Butcher and Moore and Elliott remained silent. The police detained the boys in separate rooms until about 1:30 o'clock a. m., when they were released. Other newspaper photographers were allowed to take their pictures. When one of the boys hung his head to avoid being photographed, one of the officers threatened to hit him in the mouth unless he straightened his head up, and the boy complied. During the interrogation the boys gave the officers the names of 10 or 15 of their friends with whom they had spent the evening. The officers telephoned the homes of these young people, many of whom had gone to bed, and questioned them until they became satisfied that the boys had had nothing to do with the robbery. The affair caused a great deal of comment among the friends and acquaintances of the boys and their families, and they were besieged with inquiries as to the occasion for their arrest. There was ample evidence to prove that they were frightened and humiliated by the sawed-off shotguns which were leveled at them, by the accusations of the officers, the presence of the curious crowd and the activities of the newspaper photographers. They were also greatly embarrassed by the notoriety into which they had been thrust.

The jury was instructed, in part, as follows: ''If you find the defendant Elliott requested, directed, commanded or participated in the arrest of the plaintiffs, then your verdict shall be for the plaintiffs. You are instructed that it is not enough that plaintiffs merely prove that a defendant or the defendants stated to police officers that plaintiffs looked like the men who robbed the liquor store in question here or resembled them. Plaintiffs must go further and prove either the defendants, in addition, authorized, encouraged or assisted the

officers to do any unlawful act, or that said defendant or defendants procured an unlawful arrest without process, or participated in the unlawful arrest or imprisonment, or that the defendant or the defendants wilfully identified the wrong man or men as being the person or persons who robbed said liquor store, and that said defendant or defendants did so for the purpose of having the plaintiffs, or either of them, arrested and prosecuted.'' The question propounded by these instructions was answered by the jury in favor of plaintiffs. It is reargued on the appeal upon the theory that there was no substantial evidence that defendant Elliott participated in the arrests of plaintiffs. There was ample evidence to support the implied finding that he did so participate. He was a victim of the robbery, caused the police to be summoned, pointed out Butcher and Moore, stated that they were the men who had robbed him, and when Turner interceded he directed the officers to arrest Turner also. Without his activities there would have been no identification of the plaintiffs and no arrests. The question whether defendant Elliott was acting on behalf of the partnership, consisting of himself and Riga, was submitted to the jury under an appropriate instruction, and no point is made on the appeal that the evidence was insufficient to support the implied finding of the jury that Elliott was acting as a representative of the partnership and defendant Riga.

Upon the trial defendants disclaimed any intention to justify the arrests, stating that they would not attempt to justify an arrest they were not responsible for. Their position is the same on the appeal.

Defendants rely on *Miller* v. *Fano,* 134 Cal. 103 [66 P. 183], and *Van Fleet* v. *West American Insurance Company,* 5 Cal.2d 125 [42 P.2d 378, 43 P.2d 557], in support of their claim that the arrests here were made by the police officers without any direction or assistance from the defendants. As a rule a decision as to the sufficiency of evidence in one case is found to be of no value in another. The cited cases are no exception. The facts which the courts were considering bear no resemblance to the circumstances of the arrests of plaintiffs herein.

Enough of the evidence has been stated to answer the claim that the verdicts were excessive. Certainly, it does not appear that they were the result of passion or prejudice. Defendants argue that the damages were merely nominal, citing *Maher* v. *Wilson,* 139 Cal. 514 [73 P. 418], a case in which no actual

damage was shown. A case closer in point is *Gomez* v. *Scanlan*, 155 Cal. 528 [102 P. 12], where a judgment for $2,000 was upheld. The amounts awarded the several plaintiffs indicate to us that the jury made a fair and dispassionate appraisal of the damages they had suffered.

Defendants made a motion for a new trial upon the ground, among others, of excessive damages. Since trial judges should under such circumstances make an independent determination as to the reasonableness of the verdicts, the denial of the motion must be deemed a decision by the court that the amounts of the verdicts were reasonable and in accord with a preponderance of the evidence.

The judgments are affirmed.

Wood, J., and Vallee, J., concurred.