[Civ. No. 37378. Second Dist., Div. One. Nov. 17, 1971.]

KENNETH JOHN WILSON et al., Plaintiffs and Appellants, v. COUNTY OF LOS ANGELES et al., Defendants and Respondents.

## Counsel

Max Fink and Sanford B. Schulhofer, Jr., for Plaintiffs and Appellants.

John D. Maharg, County Counsel, Larry Cory, Deputy County Counsel, Flynn & Rafferty and Harry C. Flynn, Jr., for Defendants and Respondents.

## Opinion

**LILLIE, J.**—Plaintiffs tried their false imprisonment action to a jury, and at the close of their case defendants moved to dismiss; the motion was granted and plaintiffs appeal from judgments entered on the dismissal.[1]

Although section 631.8, Code of Civil Procedure, expressly declares that its provisions are limited to a "trial by the court," and provides for

---

[1]Separate judgments of dismissal (bearing different dates) were prepared by counsel for the respective groups and signed by the trial court in due course.

findings, both groups of defendants erroneously moved for judgment thereunder. Thereafter the court made no findings. Subsequently such error was sought to be corrected by the submission of formal judgments, each captioned "Judgment of Nonsuit" and reciting that the motions granted were for "a judgment of nonsuit." A motion for judgment under section 631.8, of course, is not a motion for nonsuit. (*Charles C. Chapman Building Co.* v. *California Mart,* 2 Cal.App.3d 846, 858, fn. 2 [82 Cal.Rptr. 830].) Too, the scope of appellate review is different. ■ Unlike its consideration of a motion for nonsuit, the trial court is authorized by section 631.8 to weigh the evidence, and since its findings are accordingly entitled to the same respect on appeal as any other findings, the judgment will not be reversed if supported by substantial evidence. (*U. S. Industries, Inc.* v. *Vadnais,* 270 Cal.App.2d 520, 524 [76 Cal.Rptr. 44].) ■ The "substantial evidence" rule, however, does not govern a reviewing court when the appeal is from a judgment of nonsuit.

■ Plaintiffs initially contend that the court was not empowered to render judgment under section 631.8 and that its action in so doing constituted reversible error per se. At the same time they concede that the trial court's error may possibly have been one of form and not of substance, citing *East-West Capital Corp.* v. *Khourie,* 10 Cal.App.3d 553, 556-557 [89 Cal.Rptr. 369], and *Estate of Pack,* 223 Cal.App.2d 74, 77-78 [43 Cal. Rptr. 361]. Both of these cases involve the converse of the situation here. In each case defendant contended that he really made a motion for judgment under section 631.8 which was inadvertently phrased a motion for nonsuit. (See also *Milton Meyer & Co.* v. *Curro,* 239 Cal.App.2d 480 [48 Cal.Rptr. 812].) In *Estate of Pack* it appears that although the trial court treated the motion as one for a nonsuit, the reviewing court nevertheless determined that the requirements of section 631.8 had been met, particularly in light of the fact that the court made adequate findings reflecting its view of the evidence. Summing up, the court declared that "Reversal would require no more than that respondent's motion be couched in the language of the statute and that the court's findings and judgment be given a more appropriate label. Form would be exalted above substance and the cause of justice advanced not at all." (*Supra,* p. 79.) In our case there is this specific concession by plaintiffs: "[I]f it appears that [the trial judge] observed and followed the rules that control a trial judge on a motion for nonsuit (new C.C.P. § 581c), then looking to 'substance rather than form,' [citations], his ruling may have been proper." At the time of his ruling, the trial judge told plaintiffs' counsel, "There was certainly probable cause on the part of the sheriffs to make the arrest and, as far as Mr. Allred is concerned, why, there was certainly no bad faith shown by you or anyone else in the matter. . . ." The reasonable import of such statements is

that there was no evidence of sufficient substantiality to support a judgment in favor of the plaintiffs, the rule applied in deciding whether a nonsuit is warranted. (*Timmsen* v. *Forrest E. Olson, Inc.,* 6 Cal.App.3d 860, 867-868 [86 Cal.Rptr. 359].) In light of all the above circumstances, therefore, and adopting the converse of the situation in *Milton Meyer & Co.* v. *Curro, supra,* we treat the motions as motions for nonsuit.

Plaintiffs were formerly employed by one or the other of defendant corporations. They were arrested without a warrant by Deputy Sheriffs Lopez and Whitten following a complaint report made to Deputy Sheriff Winkler at the West Hollywood sheriff's station by defendant Allred, a co-owner of defendant corporations. Such report, filed on February 17, 1967, in pertinent part stated that Allred had been the victim of an embezzlement—the property consisting of company tools; that Allred was accompanied by his general manager, Mr. Cucinello who, when told by Allred about the loss, asked all of the employees if they had any knowledge who was responsible therefor; that a machinist (Fred Bessire) later advised Cucinello that "Susp #1 Bullard," recently "fired," had told him (Bessire) that "he didn't mind being fired as he had enough to make it worthwhile"; that Allred then "pulled" the company files and learned that Bullard, Wilson and a third suspect (Loranger) lived at the same address and had the same phone—all three had been fired for incompetence prior to the disclosure of the theft; that Allred phoned Bullard at his home asking him to explain the missing tools; that his reply was that Wilson and Loranger were involved in it as a "three-way deal" (the conversation was overheard by Cucinello on an extension phone); that in the same conversation Bullard told Allred that he would meet him later that day and straighten out the matter; that later Deputy Sheriff Winkler phoned Bullard who told him that he did not take anything from the company's plant and had no idea who did; that Allred and Cucinello both could identify the property and that Allred "is desirous of prosecution" and could be contacted at a specified place between certain designated hours.

Later, on the same afternoon (February 17, 1967), Bullard went to his former employer's plant and submitted to further interrogation by Allred; he repeatedly denied any knowledge of the tools. Despite these denials, Allred called the sheriff's substation, and two deputies (Lopez and Whitten) responded. They had previously read the complaint report and, after advising Bullard of his constitutional rights, questioned him about the missing tools. Lopez testified that the information appearing in the report was insufficient, in his opinion, to provide him with probable cause to make an arrest; he based this on Bullard's continued denials of any knowledge regarding the theft of the tools. Allred, who had been present during the

above interrogation, then left the room with Lopez; according to Lopez, he was then told by Allred that Bullard was "lying" since the latter had previously admitted that he knew about the missing tools. Lopez then called the substation and talked to his superiors who gave him permission to make the arrest. An arrest without a warrant immediately followed. While riding to the station in the patrol car, Bullard told Lopez that Loranger had taken the tools.

Later that same day, Wilson went to the West Hollywood substation where he was arrested by Deputy Whitten on the same facts and in addition, on Bullard's statement in the patrol car. Bullard denied that he made any such statement.[2]

■ In determining whether there is evidence of sufficient substantiality to support a judgment in the plaintiff's favor following the granting of a motion for nonsuit, an appellate court must view such evidence most favorably to plaintiff, drawing every legitimate inference in his favor and disregarding all conflicts. (*Hughes* v. *Oreb,* 36 Cal.2d 854, 857 [228 P.2d 550].) The above rule applies to both groups of defendants here—on the issue of lack of probable (or reasonable) cause in the case of the deputies, and lack of good faith in the instance of the remaining defendants who, vicariously or otherwise, assertedly instigated the arrests.

■ As to the arresting officers, it is not contended in their defense that the crime attributed to plaintiffs was other than a felony. Controlling, therefore, are the provisions of section 836, Penal Code, which state that "A peace officer may . . . without a warrant, arrest a person: . . . 3. Whenever he has reasonable cause to believe that the person to be arrested has committed a felony, whether or not a felony has in fact been committed." In *People* v. *Talley,* 65 Cal.2d 830, 835 [56 Cal.Rptr. 492, 423 P.2d 564], the court declared that "Reasonable or probable cause exists when the facts and circumstances within the knowledge of the officers at the moment of the arrest are sufficient to warrant a prudent man in believing that the defendant has committed an offense. [Citations.]" ■ Subsequently it was declared in *People* v. *Hogan,* 71 Cal.2d 888, 890 [80 Cal.Rptr. 28, 457 P.2d 868], that "Although information provided by an untested informer or by an anonymous informer is not, without some showing justifying reliance, sufficient to justify an arrest [citation], information from a citizen who purports to be the victim of a robbery or an assault has been held sufficient even though his reliability has not been previously tested. [Citations.] Such a person, who may expect to be called to testify after an arrest, and may be exposing himself

[2]Both defendants were released from custody four days later.

to an action for malicious prosecution if he makes unfounded charges, is more than a mere informer who gives a tip to law enforcement officers that a person is engaged in a course of criminal conduct."

The foregoing observation is significant in light of plaintiffs' contention that the trial court was required, in ruling on the motions (for nonsuit), to disregard unfavorable portions of the complaint report as well as the testimony of the officers and that of the defendant Allred which tended to conflict with plaintiffs' version of the relevant facts. It is, of course, settled that when the advisability of a nonsuit is at issue, either at trial or on appeal, evidence under Evidence Code section 776 should be disregarded insofar as it is unfavorable to the plaintiff. (*Goggin* v. *Reliance Ins. Co.,* 200 Cal.App.2d 361, 364 [19 Cal.Rptr. 446].) Therefore, according to plaintiffs, the trial court should have attached no significance to Allred's statements to the officers that Bullard was lying when he disclaimed any knowledge of the missing tools and, also, neither should the officers before making the arrests. In short, plaintiffs assert that Allred and the officers "jumped to the conclusion" that plaintiffs were implicated because they lived in the same apartment and had worked for the Allred companies at one time or another; further, neither Allred nor the officers "check out" the reliability of the informer, which source of information precipitated the arrests. But, as additionally stated in *People* v. *Hogan, supra,* "Reliable information furnishing probable cause for an arrest does not lose its reliability when it is transmitted through official channels to arresting officers, and the latter may rely on it when making an arrest. [Citations.]" (P. 891.) True, Deputy Sheriff Lopez stated that it was his personal opinion that the contents of the complaint report did not justify the arrest, but later he was told by Allred that Bullard was lying, and thereafter he contacted his superiors who authorized him to take Bullard into custody. Since Lopez did not have to believe Bullard's protestations of innocence, he had the right to accord credence to Allred's statement to the contrary. As shown in *Michael* v. *Smith,* 188 Cal. 199, 208 [205 P. 113], "If police officers had to accept the word of persons about to be arrested as to their guilt or innocence, few arrests would be made."

Contrary to plaintiffs' foregoing contentions the court did not err in considering evidence of probable cause even though elicited under section 776, Evidence Code. The situation perhaps is rather unique in that respect since it is now recognized that "the establishment of lack of probable or reasonable cause is a necessary element in an action for false arrest or imprisonment. . . ." (*Whaley* v. *Kirby,* 208 Cal.App.2d 232, 237 [25 Cal.Rptr. 50].) No longer is it enough for plaintiffs, as shown in the cited case, merely to prove that they were arrested without a warrant, thereafter

imprisoned and thus damaged. If plaintiffs, as they tactically had to do, called the officers and defendant Allred under section 776 to establish such element (lack of probable cause), the legal effect of such testimony (as well as that of plaintiffs on the same issue) was one of law for the court if based on facts without substantial conflict. (*White* v. *Martin*, 215 Cal.App.2d 641, 643 [30 Cal.Rptr. 367].) In the present case there was no substantial factual conflict save and except the identity of the thief or embezzler. However, as shown in the cases already cited, the arresting officers did not have to believe plaintiffs' denials of any connection therewith. "The opinion in *People* v. *Ingle, supra* [53 Cal.2d 407 (2 Cal.Rptr. 14, 348 P.2d 577)] states (at p. 413): 'Probable cause has also been defined as having more evidence for than against; supported by evidence which inclines the mind to believe, but leaves some room for doubt.' The identification and the circumstances here surely were sufficient to cause the officers to entertain a strong suspicion that the guilty persons were those before them and to make the arrest." (*Cole* v. *Johnson*, 197 Cal.App.2d 788, 793 [17 Cal.Rptr. 664].) Applying the above rules and principles to the facts at bar, it must be concluded that the court did not err in granting the motion of defendant County of Los Angeles for a judgment of nonsuit.

 As to the remaining defendants, it was contended that they instigated plaintiffs' arrests and should be liable in damages therefor. Although no California authority is expressly cited for this theory of recovery, there are cases which hold that when a victim of a crime causes the police to be summoned, points out the plaintiffs as the perpetrators thereof and directs their arrests, such person is liable for the consequences of his acts. Such was the holding in *Turner* v. *Elliott*, 91 Cal.App.2d 901 [206 P.2d 48], where the court concluded that "Without [defendant's] activities there would have been no identification of the plaintiffs and no arrests." (P. 904.) In so concluding, the *Turner* opinion purported to distinguish *Miller* v. *Fano*, 134 Cal. 103, 107 [66 P. 183], which observed, in reversing a judgment for false arrest against the victim of the alleged crime on the same theory here urged, that "[I]t would be a hard and unjust law that would hold a party responsible in damages for false imprisonment for an honest mistake as to the identity of a party." Subsequent to *Turner*, the Supreme Court in *Turner* v. *Mellon*, 41 Cal.2d 45, 49 [257 P.2d 15], disapproved implications therein which were contrary to the *Miller* case, holding "as a matter of law" that the conduct of the victim (Mellon) "did not amount to participation in the arrest. . . ." Earlier the same decision observed: "All that Mellon did here was to report the commission of the crimes and state to the police officers his honest but mistaken opinion that plaintiff was the robber. This conduct did not in law amount to taking 'some active part in bringing about the unlawful arrest,' and since Mellon did not participate in the false

imprisonment neither he nor his employer, whose only liability would necessarily rest on the doctrine of *respondeat superior*, is liable therefor." (*Supra*, p. 48.) Similar observations are found in *Hughes* v. *Oreb*, 36 Cal. 2d 854 [228 P.2d 550], which reversed a judgment of nonsuit in favor of the arresting officers at the same time affirming the nonsuit in favor of defendant victim: "The cases make it clear . . . that the defendant must have taken some active part in bringing about the unlawful arrest and that he is not liable if, acting in good faith, he merely gives information to the authorities. [Citations, including *Miller* v. *Fano, supra*.]" (P. 859.) Defendant Allred testified that he "was interested in getting [his] tools back. That is all [he] was interested in. [He] had no axe to grind with anyone except getting [his] tools back." There seeems to have been no evidence to the contrary indicating lack of good faith although plaintiffs list several instances which viewed in their favor, tend to indicate that Allred actively participated in the lawful arrest. We are of the opinion, however, that these activities amounted to nothing more than repeated insistence that plaintiffs were connected with the theft or embezzlement. ▮ As shown above, statements of one's belief in a person's guilt are not the "active participation" required to make the victim liable for the consequences of any subsequent false arrest. ▮ The trial court, therefore, did not err in granting the motion for nonsuit with respect to these remaining defendants.

Each judgment is affirmed.

Wood, P. J., and Clark, J., concurred.