Filed 11/29/23  Sandoval v. City of Beverly Hills CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

|  |  |
|---|---|
| EMMANUEL SANDOVAL,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>CITY OF BEVERLY HILLS et al.,<br><br>    Defendants and Respondents. | B319382<br>(Los Angeles County<br> Super. Ct. No. BC708428) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Harry Jay Ford III, Judge.  Affirmed.

Law Offices of Gary S. Casselman, Gary S. Casselman and Danielle L. Casselman, for Plaintiff and Appellant.

Richards, Watson & Gershon, Jennifer Petrusis, Ginetta L. Giovinco, Garen N. Bostanian, and Stephen D. Lee, for Defendants and Respondents.

Plaintiff and appellant Emmanuel Sandoval appeals from judgment after the trial court granted summary judgment in favor of defendants and respondents, City of Beverly Hills and Beverly Hills Police Department Officers Andrew Myers, Michael Downs, and Stephanie Nguyen-Lieu (collectively, defendants) on causes of action for false imprisonment, negligence, and violation of the Tom Bane Civil Rights Act (Civ. Code, § 52.1) (the Bane Act). The trial court granted summary judgment after finding the undisputed facts established probable cause to arrest Sandoval under Penal Code section 647, subdivision (f) (hereinafter section 647(f)) for being intoxicated in public and unable to exercise care for his own safety or the safety of others.

On appeal, Sandoval contends a triable issue of fact exists on the legality of his arrest and whether defendants had probable cause to arrest him for public intoxication. We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

**1. The Complaint**

In the operative first amended complaint (FAC), Sandoval alleged that around 8:00 p.m. on November 11, 2017, he was crossing the street near a marked crosswalk in the City of Beverly Hills when he was struck by a car. The FAC alleged that Officers Myers, Downs, Nguyen-Lieu, and other officers responded to the scene to investigate, and after some investigation, the individual defendants placed Sandoval under arrest without having probable cause.

The FAC asserted three causes of action against defendants for (1) false imprisonment; (2) violation of the Bane Act based on Sandoval's right to be free from unreasonable seizure; and (3) negligent hiring, training, and supervision, and as to Officers

2

Myers, Downs, and Nguyen-Lieu, negligent performance of duties.[1]

## 2.    The Motion for Summary Judgment/Adjudication[2]

Defendants filed a motion for summary judgment, or in the alternative, summary adjudication.  In relevant part, defendants argued they were entitled to judgment on all three causes of action because the undisputed facts established probable cause to arrest Sandoval under section 647(f).  Defendants attached declarations from Officers Myers, Downs, Nguyen-Lieu, and others, a recording and verified transcript of the officers' investigation and arrest of Sandoval, and various excerpts of deposition testimony.

The undisputed evidence establishes the following sequence of events.  Goldberg testified he was driving his car toward an intersection approximately 60-to-70 feet away when a person suddenly ran into the street and into his car.  After the pedestrian-vehicle collision, Goldberg pulled his car over, got out, and noticed his side mirror was missing.  A man Goldberg later identified as Sandoval ran over and accused Goldberg of hitting him with a car.  Goldberg testified that Sandoval had a "chaotic way of talking" and appeared to be "under the influence of something."  Goldberg or his female companion called the police.

---

[1]    The FAC asserted an additional cause of action for negligence against the driver of the car, David Goldberg, who is not a party to this appeal.

[2]    We recite the factual background from evidence admitted by the trial court.  We do not consider any evidence excluded by the trial court, as the court's evidentiary rulings remain unchallenged on appeal.

3

Officer Downs testified he and Officers Nguyen-Lieu, Myers, and two other officers responded to a 911 call involving Goldberg, Sandoval, and another person later identified as Princeton Legree.[3]  Officers Downs and Nguyen-Lieu testified the call from dispatch indicated a man possibly under the influence of alcohol or drugs had run into the streets hitting cars.

Officer Downs verified the accuracy of a transcript of audio-video footage of the officers' investigation and arrest of Sandoval. As provided in the transcript, Officer Downs initially contacted Sandoval and asked whether Sandoval was listening to him. Officer Downs stated, "Hello?  Can you hear me?  Is there a reason why you're not paying attention?"  After agreeing to be searched by Officer Downs, Sandoval declined to stand up and stated, "I got hit."  Officer Downs replied, "You were walking when I got here.  Stand up and face the fence."  Officer Downs also asked Sandoval if he was "having trouble listening" and told Sandoval to "[s]top flexing."

Officers asked Sandoval if he required medical assistance, to which Sandoval exclaimed, "Obviously I can fucking walk it off.  Like, look at my fucking track field shit."[4]  When asked the same question twice more, Sandoval responded, "Look at my fucking track field shit.  I could walk it off," and "Look at my track field shit.  I can walk it off."  He then proclaimed, "So this is what happens when you get hit by a car."  Officer Downs responded, "This is what happens when you're drunk in public;

---

[3]     Legree is a named plaintiff but is not a party to this appeal.

[4]     Officer Myers testified that "one of the [p]laintiffs displayed evidence of intoxication in that he had rapid, slurred speech and he delayed in responding to officers' questions or requests . . . ."

4

have you had anything to drink tonight?" Sandoval did not respond.

Officer Downs told Sandoval to stop pulling away, asked if he could "stand on [his] own," and told Sandoval he appeared to be "wobbling back and forth." Another officer asked Sandoval again if he was drinking. The officer stated, "[W]hat am I smelling right now? Is that alcohol? What were you drinking?" Sandoval did not answer the question, and instead stated, "If I walked . . . [¶] through a street and like if someone hits me . . . [¶] is that bad?" To determine if Sandoval had been drinking, Officer Downs directed Sandoval to follow the tip of a pen with his eyes and not move his head. Sandoval did not follow directions and moved his head.

Officer Downs then spoke with Sandoval's friend, Legree, who stated both he and Sandoval previously consumed two beers and two drinks consisting of vodka alone (vodkas). During Legree's interview, Sandoval interjected and shouted, "I got the fucking track [inaudible] I was literally --."

Officer Nguyen-Lieu observed Sandoval and Legree during the investigation and could hear them speak with her colleagues. Sandoval appeared "belligerent" to Officer Nguyen-Lieu. After speaking with other officers, Officer Nguyen-Lieu decided to arrest Sandoval and Legree for public intoxication. After telling both men they were being placed under arrest for public intoxication, Officer Downs handcuffed both men and assisted Officer Nguyen-Lieu in placing them in police cars.

As depicted in the 20-minute audio-video recording of the investigation and arrest, Sandoval made abrupt exclamations (including incoherent statements) and refused to answer questions about his consumption of alcohol. In his own

5

deposition, Sandoval admitted he had consumed several drinks about an hour before the collision.

### 3.    Sandoval's Opposition

Sandoval opposed defendants' motion for summary judgment, arguing in relevant part the evidence was insufficient to establish probable cause for his arrest.  In support, Sandoval attached his own declaration and declarations from Legree and their trial counsel, Gary S. Casselman.

Sandoval testified he "consumed alcoholic beverages with and without food" over the course of several hours on November 11, 2017.  He and Legree had "sushi and drinks" between 4:00 and 5:30 p.m.  They returned to his residence around 6:30 p.m. and drank "several beers" in the next 60 to 90 minutes.  They left around 7:30 to 8:00 p.m. to go for a walk.  Sandoval said he felt "mild effects of the alcohol [he had] consumed, some of which had worn off."  On the way back to his residence, Sandoval saw Legree walking ahead of him as he "began to cross East toward [his] home, slightly before the marked crosswalk. . . .  [¶]  Suddenly, [Sandoval] was struck on [his] right leg by a small" car driven by Goldberg.  Sandoval acknowledged he "complained a lot" during the police investigation but testified he was upset he had been treated "like a suspect instead of an accident victim."  Sandoval and Legree testified they were able to stand, walk, and converse without assistance.  Sandoval denied falling down, swaying or staggering, and being unable to care for himself.

Sandoval also filed evidentiary objections to defendants' evidence.  Most of Sandoval's evidentiary objections were lodged against statements appearing in defendant's separate statement

6

of facts.  The objections were not numbered consecutively and did not quote or set forth the objectionable statement(s) or material. (See Cal. Rules of Court, rule 3.1354(b).)  In addition to these objections, Sandoval listed objections to the declarations of Officers Nguyen-Lieu and Myers.  Although the objections generally identified the paragraph numbers to which Sandoval objected, they did not quote or set forth the objectionable statements appearing in either declaration.

4.	**The Order Granting Summary Judgment**

Following a hearing on defendants' motion for summary judgment/adjudication,[5] the court issued an order granting defendants' motion for summary judgment, disregarding all of Sandoval's evidentiary objections to defendants' separate statement, and overruling all of his objections to statements identified in the declarations of Officers Nguyen-Lieu and Myers. Sandoval does not challenge any of these evidentiary rulings on appeal.[6]

In granting the motion for summary judgment, the court found the following facts undisputed:  (1) Before the pedestrian-vehicle collision, Sandoval consumed two beers and two vodkas; (2) Sandoval either ran into Goldberg's car or was unaware of the car and was struck by it in the street; (3) Sandoval exhibited belligerent behaviors and (4) made repeated nonsensical statements; and (5) Sandoval had difficulty following Officer

---

[5]	The appellate record does not include a reporter's transcript from the hearing.

[6]	In addition, the court excluded statements appearing in Casselman's declaration regarding defendants' alleged spoliation of evidence.  Sandoval does not challenge this evidentiary ruling.

Downs's pen with his eyes.  These facts, known to all individual defendants at the time of Sandoval's arrest, would cause a person of reasonable caution to suspect he was intoxicated in public and incapable of caring for his own safety or the safety of others within the meaning of section 647(f).  Following entry of judgment for defendants, Sandoval timely appealed.

## DISCUSSION

Sandoval contends there are triable issues of fact concerning whether defendants possessed probable cause to effect a lawful arrest.  We conclude the undisputed facts known to defendants established probable cause to arrest Sandoval for public intoxication, thereby negating an essential element of all three causes of action against defendants.

### 1.    Standard of Review

A motion for summary judgment is properly granted when "all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  (Code Civ. Proc., § 437c, subd. (c).) We review a grant of summary judgment de novo and decide independently whether the facts not subject to triable dispute warrant judgment for the moving party.  (*Hartford Casualty Ins. Co. v. Swift Distribution, Inc.* (2014) 59 Cal.4th 277, 286; *Schachter v. Citigroup, Inc.* (2009) 47 Cal.4th 610, 618.)

When defendants move for summary judgment, they bear the initial burden of presenting sufficient evidence to show the plaintiff cannot prove one or more elements of their causes of action.  (§ 437c, subd. (p)(2); *Carlsen v. Koivumaki* (2014) 227 Cal.App.4th 879, 889; *Aguilar v. Atlantic Richfield Co.* (2001) 25

Cal.4th 826, 843.)  If the defendants meet this initial burden, the burden shifts to the plaintiff to "make an independent showing by a proper declaration or by reference to a deposition or another discovery product that there is sufficient proof of the matters alleged to raise a triable question of fact . . . .  [Citations.]" (*Wiz Technology, Inc. v. Coopers & Lybrand* (2003) 106 Cal.App.4th 1, 10–11.)  The plaintiff may not rely on claims, theories, or self-serving declarations unsupported by admissible evidence.  (*Id.* at p. 11; *King v. United Parcel Service, Inc.* (2007) 152 Cal.App.4th 426, 433.)

As the pleadings frame the relevant issues for purposes of summary judgment (see *Wassmann v. South Orange County Community College Dist.* (2018) 24 Cal.App.5th 825, 851), we first address the requisite elements of each cause of action before turning to the merits of defendants' motion.

**2. False Imprisonment, Negligence, and Violation of the Bane Act**

The FAC asserted causes of action against defendants for false imprisonment, negligence, and violation of the Bane Act. "The elements of a tortious claim of false imprisonment are: (1) the nonconsensual, intentional confinement of a person, (2) without lawful privilege, and (3) for an appreciable period of time . . . ." (*Easton v. Sutter Coast Hospital* (2000) 80 Cal.App.4th 485, 496; see *Moore v. City & County of San Francisco* (1970) 5 Cal.App.3d 728, 735 ["since an arrest involves detention or restraint, false arrest always involves an imprisonment, and a suit for false imprisonment automatically embraces the wrongful arrest; and two separate torts are not involved"].)

9

To state a viable claim for negligence, a plaintiff must show the "'"defendant had a duty to use due care, that he breached that duty, and that the breach was the proximate or legal cause of the resulting injury. [Citation.]"' [Citation.]" (*Collins v. County of San Diego* (2021) 60 Cal.App.5th 1035, 1048–1049 (*Collins*).)

The Bane Act provides for liability for the interference or attempted interference with a person's constitutional rights "by threat, intimidation, or coercion." (Civ. Code, § 52.1, subd. (b).) To plead a cause of action under the Bane Act, the plaintiff must show "(1) intentional interference or attempted interference with a state or federal constitutional or legal right, and (2) the interference or attempted interference was by threats, intimidation or coercion." (*Allen v. City of Sacramento* (2015) 234 Cal.App.4th 41, 67 (*Allen*).)

In the factual context of an arrest, all three causes of action require an unlawful seizure, that is, a seizure unsupported by reasonable or probable cause. (See *Collins*, *supra*, 60 Cal.App.5th at p. 1049 [negligence]; *Bender v. County of Los Angeles* (2013) 217 Cal.App.4th 968, 978 [Bane Act] (*Bender*); *Wilson v. County of Los Angeles* (1971) 21 Cal.App.3d 308, 315 [false arrest and imprisonment] (*Wilson*), disapproved on another ground in *Cervantez v. J.C. Penney Co.* (1979) 24 Cal.3d 579.)

3.    **The Undisputed Evidence Establishes Probable Cause to Arrest**

The trial court in this case found undisputed evidence demonstrating probable cause to arrest Sandoval for public intoxication. We agree with the trial court.

Although peace officers are not granted governmental immunity for false arrest and imprisonment, they are

10

individually immune from civil liability if acting within the scope of their authority.  They act within the scope of their authority if the "arrest was lawful, or the peace officer, at the time of the arrest, had reasonable cause to believe the arrest was lawful." (Pen. Code, § 847, subd. (b); see *id.*, § 836.5, subd. (b); *O'Toole v. Superior Court* (2006) 140 Cal.App.4th 488, 511 (*O'Toole*).)  A peace officer "may arrest a person without a warrant whenever the officer . . . has reasonable cause to believe that the person to be arrested has committed a misdemeanor in the presence of the officer . . . ."  (Pen. Code, § 836.5, subd. (a).)

"""In conformity with the rule at common law, a warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed."'  [Citation.]" (*Levin v. United Air Lines, Inc.* (2008) 158 Cal.App.4th 1002, 1017 (*Levin*).)  Probable cause to arrest arises whenever the facts known to the arresting officer "would lead a reasonable person to have a strong suspicion of the arrestee's guilt.  (*People v. Mower* (2002) 28 Cal.4th 457, 473.)"  (*O'Toole*, *supra*, 140 Cal.App.4th at p. 511; accord, *Levin*, *supra*, at p. 1018.)  As this is an *objective* standard, whenever the facts "known to an officer are sufficient to constitute probable cause to arrest, the possibility of an innocent explanation does not vitiate probable cause and does not render an arrest unlawful."  (*Johnson v. Lewis* (2004) 120 Cal.App.4th 443, 453 (*Johnson*).)

The existence of circumstances offered to justify an arrest is generally a question of fact "while the sufficiency of those circumstances to actually justify the arrest is a 'question of law.'" (*Schmidlin v. City of Palo Alto* (2007) 157 Cal.App.4th 728, 777.) However, when the facts are "admitted or beyond controversy,"

11

the existence of facts giving rise to reasonable or probable cause shall be determined by the court. (*Aitken v. White* (1949) 93 Cal.App.2d 134, 141; accord, *Levin, supra,* 158 Cal.App.4th at p. 1018.)

In support of their motion for summary judgment, defendants argued the undisputed facts established probable cause for them to believe Sandoval was publicly intoxicated within the meaning of section 647(f). Under this statute, "[a]n officer has probable cause to place a person under arrest . . . when the individual is intoxicated and in a public place, and the totality of circumstances demonstrates that he is unable to exercise care for his own safety or the safety of others." (*Baranchik v. Fizulich* (2017) 10 Cal.App.5th 1210, 1218 (*Baranchik*); accord, *People v. Lively* (1992) 10 Cal.App.4th 1364, 1368–1369.)

The following facts in this case are undisputed. In addition to other officers employed by the City of Beverley Hills, Officers Nguyen-Lieu, Myers, and Downs responded to the site of the pedestrian-vehicle collision involving Sandoval after they received a 911 dispatch describing a man possibly under the influence running in the street. When contacted by Officers Downs and Myers—and as observed by Officer Nguyen-Lieu— Sandoval exhibited behaviors consistent with intoxication. He smelled of alcohol and had trouble listening and following directions; he made several unprompted and incoherent proclamations; he cursed repeatedly and refused to respond to questions about consuming alcohol and running into the street; and he failed to follow directions in an exercise to gauge whether he was intoxicated. Sandoval informed officers he had been hit by a car while walking on the street, and it was confirmed

12

Sandoval had previously consumed alcohol (two beers and two vodkas) before the collision.

These facts establish probable cause to suspect Sandoval was under the influence of alcohol in a public place and, having already placed himself in danger by walking into the street without ensuring safe passage, remained unable to exercise care for the safety of himself or others. (Accord, *Baranchik*, *supra*, 10 Cal.App.5th at pp. 1218–1219 [appellant smelled of alcohol, had slurred speech, and matched description of a participant who had previously engaged in bar fight]; *Washburn v. Fagan* (9th Cir. 2009) 331 Fed.Appx. 490, 492 [appellant intoxicated in public and "was in the way of oncoming traffic after the light changed and before he returned to the median area"].) Sandoval was arrested not because he was simply intoxicated but because he engaged in "*conduct* that posed a safety hazard" to himself and others. (*People v. Kellogg* (2004) 119 Cal.App.4th 593, 602.)

Sandoval's arguments to the contrary are not persuasive. Sandoval first contends that "statements given to officers about events not committed in the officers' presence were not legally to be considered as probable cause in Sandoval's misdemeanor arrest." This argument "is contrary to common sense and the purpose of section 647[(f)], for if it were a proper construction, the statute would punish one for how and where he was first observed without regard for what he did previous or subsequent thereto." (*People v. Olson* (1971) 18 Cal.App.3d 592, 596 (*Olson*).) It is well-settled law enforcement may properly rely on information gleaned from dispatch (*People v. Hogan* (1969) 71 Cal.2d 888, 891) and statements from private citizens who witnessed a criminal act (*People v. Ramey* (1976) 16 Cal.3d 263, 269).

Citing a concurring opinion from a Supreme Court decision in *Powell v. Texas* (1968) 392 U.S. 514, Sandoval also contends section 647(f) requires an "intoxication level" amounting to "*disabling helplessness.*" (Citing *id.* at p. 554, fn. 5 (conc. opn. of White, J.) ["I do not question the power of the State to remove a helplessly intoxicated person from a public street, although against his will, and to hold him until he has regained his powers"].) Sandoval furnishes no case, and we are aware of none, requiring proof of a *heightened* or serious level of intoxication.[7] We decline Sandoval's suggested interpretation and adhere to the plain language of section 647(f), which requires a person to be "under the influence of intoxicating liquor" and, as relevant here, in a condition unable to "exercise care for his or her own safety or the safety of others."

Finally, Sandoval contends there is a "clear conflict in the evidence" as to his intoxication and ability to care for himself or others. In this regard, he concedes he exhibited belligerent behavior during the police investigation but asserts there are plausible reasons for it, such as injury or indignation.

Even construing the evidence in Sandoval's favor, we discern no triable issue of fact. Sandoval's own declaration demonstrates he crossed a residential street outside a marked

---

[7] The cases on which Sandoval relies do not address a requisite level of intoxication under section 647(f). (E.g., *Carcamo v. Los Angeles County Sheriff's Dept.* (2021) 68 Cal.App.5th 608, 616–618 [section 647(f) preempted municipal ordinance]; *Lively, supra,* 10 Cal.App.4th at pp. 1372–1373 ["the totality of circumstances must be considered in determining whether the intoxicated person can exercise care for his or her own safety or the safety of others"]; *Olson, supra,* 18 Cal.App.3d at pp. 597–598 [defendant found passed out, and when awake, she staggered while walking and failed several "balance and coordination tests"].)

crosswalk while admittedly feeling the effects of alcohol. As his counsel at oral argument acknowledged, Sandoval provided no evidence demonstrating the care he exercised when entering the roadway at night with oncoming traffic. (See *Butte Fire Cases* (2018) 24 Cal.App.5th 1150, 1169, fn. 10 [we have "'no duty to search the record for evidence'" favoring appellants who challenge rulings on summary judgment]; *Sharabianlou v. Karp* (2010) 181 Cal.App.4th 1133, 1149 ["we will not scour the record on our own in search of supporting evidence"].) Sandoval does not deny making incoherent statements or refusing to answer questions about running into the street and what he had been drinking. That Sandoval's behavior could have resulted from matters unrelated to his intoxication did not vitiate the officers' determination of probable cause. (Accord, *Johnson, supra,* 120 Cal.App.4th at p. 453 [affirming summary judgment despite plaintiff's "innocent explanation" for her behavior]; see also *Michigan v. DeFillippo* (1979) 443 U.S. 31, 36 ["We have made clear that the kinds and degree of proof . . . necessary for a conviction are not prerequisites to a valid arrest"].)

At a minimum, the evidence known to the officers at the time of Sandoval's arrest, including Sandoval's own testimony, provided probable cause to believe he was intoxicated in public, and having walked or run into traffic without exercising care for himself or others, he remained unable to do so. Thus, the trial court properly sustained defendants' motion for summary judgment on all three causes of action against defendants for false imprisonment, negligence, and violation of the Bane Act.

(*Collins, supra,* 60 Cal.App.5th at p. 1049; *Bender, supra,* 217 Cal.App.4th at p. 978; *Wilson, supra,* 21 Cal.App.3d at p. 315.)[8]

## DISPOSITION

The judgment is affirmed.  Defendants shall recover their costs on appeal.

MORI, J.

We concur:

CURREY, P. J.

ZUKIN, J.

---

[8]    Consistent with prior decisions on the issue, we also uphold the trial court's finding Sandoval failed to support his cause of action for violation of the Bane Act with evidence of "coercion independent" from his arrest. (*Shoyoye v. County of Los Angeles* (2012) 203 Cal.App.4th 947, 959; *Allen, supra,* 234 Cal.App.4th at pp. 66–67.)