[Civ. No. 57221. Second Dist., Div. Five. Mar. 28, 1980.]

GARY DU LAC, Plaintiff and Appellant, v.
PERMA TRANS PRODUCTS, INC., et al.,
Defendants and Respondents.

**COUNSEL**

Charles J. Fleishman for Plaintiff and Appellant.

Edward G. Koelsche and Joseph C. Girard for Defendants and Respondents.

**OPINION**

**STEPHENS, J.**—This is an appeal from a judgment dismissing plaintiff Gary Du Lac's cause of action for false imprisonment after the court sustained, without leave to amend, a demurrer to the first cause of action of the second amended complaint.

Gary Du Lac joined in a complaint with William Du Lac and Susan Du Lac against defendants Perma Trans Products, Inc., and Farouk Gizatullin. The first cause of action alleged in the complaint was brought by Gary Du Lac alone; further, he did not join in any other cause of action pled in the complaint.[1]

The complaint alleged the following facts concerning plaintiff's action. William and Susan Du Lac own Encore Designs (hereinafter Encore), a business engaged in printing designs and slogans on T-shirts. Gary Du Lac is employed at Encore.

Defendant Perma Trans Products, Inc. (hereinafter Perma Trans) is also engaged in the business of printing designs and slogans on T-shirts and is a business competitor of Encore. Perma Trans also sells T-shirts and other supplies to businesses engaged in printing designs and slogans on T-shirts. Defendant Farouk Gizatullin (hereinafter Farouk) is "operations manager" of Perma Trans and was at all times pertinent acting within the course and scope of his duties at Perma Trans. Further, all of Farouk's described acts were authorized or later ratified by Perma Trans.

On December 7, 1977, plaintiff was arrested by a Los Angeles police officer at the Encore premises in North Hollywood. He was "accused of violating Penal Code Section 487.1." The arrest was made without a warrant.

Plaintiff then alleges defendants' relationship to the arrest as follows: "Plaintiffs are informed and believe and based upon such information and belief allege that said arrest by the offices [*sic*-officers] of the Los Angeles Police Department was based on accusations made by the defendants.... Said accusations... were false and plaintiffs are informed and believe and based upon such information and belief allege that at the time of the making of the accusations, defendants... knew that said accusations which they were making to the [police] were false...."

The remaining allegations relate to plaintiff's damages, and will be discussed, *infra*.

---

[1]Hereinafter, unless otherwise indicated, the first cause of action in the complaint (which deals exclusively with plaintiff's claim) will be referred to as "the complaint."

The complaint was demurred to generally and specially. The court sustained the general demurrer on the grounds that the facts failed to state a cause of action.

## DISCUSSION

Defendants' primary contention in support of the court's order sustaining the demurrer is that the complaint fails to allege facts sufficient to state a cause of action.

### Allegation of the Requisite Act

They assert that plaintiff has failed to allege facts showing any tortious conduct by defendants. They note that the purported tortious act was the making of "an accusation" to police. It was the police—not defendants—who decided to make the arrest. They urge that under California law, liability for false imprisonment cannot be predicated upon the act of a citizen giving information to police. We reject defendants' statement of the law; nevertheless, we conclude that plaintiff has failed to adequately plead acts on defendants' part sufficient to state a cause of action for false imprisonment.

As this court recently restated in *Ramsden* v. *Western Union* (1977) 71 Cal.App.3d 873 [138 Cal.Rptr. 426], "[t]he fact that the arrest was made by Los Angeles police officers and not directly by defendants does not render them immune, because a party who 'authorizes, encourages, directs or assists an officer to do an unlawful act, or procures an unlawful arrest, without process, or participates in the unlawful arrest or imprisonment, is liable.' [Citations.]" (*Id.* at p. 880.)

Defendants urge that the only tortious act alleged was the making of an accusation to police and they point to the settled rule that "[a] private person does not become liable for false imprisonment when *in good faith* he gives information—even *mistaken* information—to the proper authorities though such information may be the principal cause of plaintiff's imprisonment." (Italics added. *Peterson* v. *Robison* (1954) 43 Cal.2d 690, 695 [277 P.2d 19]; *Gogue* v. *MacDonald* (1950) 35 Cal.2d 482, 487 [218 P.2d 542, 21 A.L.R.2d 639]; *Miller* v. *Fano* (1901) 134 Cal. 103, 106 [66 P. 183].) The reason for this rule is the social policy which seeks to encourage persons to report criminal activity to the authorities "without fear of *civil* reprisal for an honest mistake...."

(Italics added. *Turner* v. *Mellon* (1953) 41 Cal.2d 45, 48 [257 P.2d 15].) We however do not believe that this policy would be served by immunizing those who knowingly make false reports to the police.

None of the cases cited by defendants involved informants who knowingly gave police false inculpatory information. Indeed the cases denying liability emphasize the informant's good faith. For example, in *Miller* v. *Fano, supra,* 134 Cal. 103, defendant was in the business of buying and selling railroad tickets. Someone sold defendant a stolen ticket; defendant subsequently identified the wrong man to the police. The court held that defendant could not be liable for the mistaken identification where the evidence showed that defendant "certainly believed plaintiff to be a man who had sold him a railroad ticket." (*Id.* at p. 106.) Nevertheless, the court noted as follows: "No doubt, if a person should wilfully identify the wrong man as being the criminal, for the purpose of having him arrested and prosecuted, and on such identification he should be arrested, such person would aid and assist in the arrest." (*Id.* at p. 107.) In *Gogue* v. *MacDonald, supra,* 35 Cal.2d 482, the complaint alleged that defendant had reported certain facts to a justice of the peace: that plaintiff had left defendant's cottage without paying rent due. The justice of the peace issued a warrant for plaintiff's arrest, although the facts defendant reported did not constitute any criminal offense. In holding that the plaintiff's complaint failed to state a cause of action the court emphasized that "[t]here is no allegation of bad faith, such as wilful falsity or malice, in the defendant's statement of the facts to the justice of the peace." (35 Cal.2d 482, 484.) In short, the informants' good faith and honesty was a key fact in immunizing them for liability. In our view, a different rule controls when an arrest occurs because the defendant knowingly gave the police false or materially incomplete information, of a character that could be expected to stimulate an arrest. Such conduct instigates, encourages, and invites the arrest that follows; hence, such conduct can be a basis for imposing liability for false imprisonment. (Accord, *Pearson* v. *Galvin* (1969) 253 Ore. 331 [454 P.2d 638]; *Jensen* v. *Barnett* (1965) 178 Neb. 429 [134 N.W.2d 53]; *Wehrman* v. *Liberty Petroleum Co.* (Mo.App. 1964) [382 S.W.2d 56].)

■ In the present complaint, plaintiff does allege that defendants knowingly made "false accusations" to police which formed the basis of his arrest without a warrant; nevertheless, he failed either to allege or to show facts demonstrating that these "accusations" were of a character

that could be expected to induce an arrest. Such an allegation is necessary because of the rule that defendants cannot be liable for false imprisonment unless they take an *active role* in bringing about the unlawful arrest. (*Hughes* v. *Oreb* (1951) 36 Cal.2d 854, 859 [228 P.2d 550].) That they knowingly made "false accusations" without more does not adequately connote an "active role." Many false accusations can be conceived that create no recognizable risk of arrest. A defendant should not be liable for an unlawful arrest which follows solely upon a false accusation that the plaintiff seldom bathes. On the other hand, one may be said to have actively induced a wrongful arrest which results from a false accusation that others have "stolen" particular property of the accuser. In the absence of an allegation (or facts showing) that the accusation was of a character as to foreseeably induce an arrest, no cause of action for false imprisonment was stated.[2]

### Allegations Showing Intent

Defendants also assert that the allegations failed to state that defendants *intended* to instigate the arrest of plaintiff. They point out that the allegations do not disclose specifically who the "false accusation" was aimed at. Again defendants have incorrectly interpreted the law; yet we agree that plaintiff failed to allege the essential fact of intent.

■ To constitute liability for false imprisonment, defendants' false statements knowingly made to police must have been made with the *intent* to induce an arrest. "[T]he actor is not liable unless his act is done for the purpose of imposing confinement upon the other, or with knowledge that such a confinement will, to a substantial certainty, result from it. It is not enough that the actor realizes or should realize that his actions involve a risk of causing a confinement, so long as the likelihood that it will do so falls short of a substantial certainty." (Rest.2d Torts, § 35, com. h; Prosser, Torts (4th ed. 1971) § 11, p. 48, 1 Harper & James, Law of Torts (1956) § 3.7, fn. 15.)

In a complaint alleging a cause of action for false imprisonment based upon an unlawful arrest, it is frequently unnecessary to expressly refer to the fact of "intent"; an allegation that A arrested B necessarily

---

[2]Such an allegation is also necessary to show proximate causation. Cause in fact was adequately pled: plaintiff alleged that the police "based" the arrest upon the false accusation. Such allegation was nevertheless insufficient to show that police reliance on the defendants' accusation was a normal incident of the risk created by the accusation.

implies an intent to confine another. But where, as here, one alleges that another knowingly made false accusations to the police, the intent of the false accuser is not certain. The fact that a person made an accusation to police which he knew to be false does not necessarily mean that the accusation was made for the purpose of inducing the police to arrest someone; nor does it mean that the person knew, or should have known, that an arrest would be substantially certain to result. Hence, the essential element of intent should have been spelled out in order to state a cause of action.

We do point out, however, that, contrary to the view expressed by defendants, plaintiff was not required to allege that defendants *knew* plaintiff and specifically acted with the intent to have *him* arrested. The doctrine of transferred intent has long been recognized to apply to the tort of false imprisonment. (Prosser, Torts (4th ed. 1971) § 11, p. 48; 1 Harper & James, Law of Torts (1956) § 3.7, p. 228; Rest.2d Torts, § 43.) Under this doctrine the intention to confine any person is a sufficient intent to render one liable to the person actually confined. It is immaterial that the actor did not know the identity of the person he intended to confine; nor does it matter that the actor intended to affect some person other than the one actually confined. (*Id.*) Thus an allegation that defendant intended to induce an arrest of *someone* would have been sufficient.

### Allegation of an Unlawful Confinement

Defendants next assert that plaintiff failed to plead facts showing that the arrest of plaintiff was unlawful. He urges that plaintiff's allegation that the arrest was without warrant was insufficient, because it failed to negate the various situations in which an arrest without warrant is privileged. For purposes of pleading, it is sufficient that plaintiff alleges arrest without a warrant; plaintiff need not anticipate and negate all of the facts under which the warrantless arrest would be lawful. (*Monk* v. *Ehret* (1923) 192 Cal. 186, 189 [219 P. 452]; *Kaufman* v. *Brown* (1949) 93 Cal.App.2d 508, 511 [209 P.2d 156]; *Collins* v. *Owens* (1947) 77 Cal.App.2d 713, 715 [176 P.2d 372].)

### Allegation of Damages

Defendants also assert that plaintiff failed to plead facts sufficient to show that he was entitled to exemplary damages or attorney's

fees incurred to secure his release from jail. This objection to plaintiff's complaint was not a proper subject of a general demurrer. A failure to plead facts entitling a plaintiff to certain types of relief does not render the complaint subject to general demurrer, if the complaint states facts showing that he is entitled to *some* relief. (*Ramsden* v. *Western Union* (1977) 71 Cal.App.3d 873, 882-883 [138 Cal.Rptr. 426]; *McDonell* v. *American Trust Co.* (1955) 130 Cal.App.2d 296, 301-302 [279 P.2d 138].) A cause of action for false imprisonment entitling a plaintiff to relief does not require any allegation of damages other than the fact of confinement itself (Prosser, Torts (4th ed. 1971) § 11, p. 43); hence, purported defects in plaintiff's allegations of damages were not susceptible to general demurrer.[3]

### *The Sustaining of the Demurrer Without Leave to Amend*

Plaintiff claims that notwithstanding any defects found to exist in the complaint, the trial court abused its discretion when it sustained the demurrer without granting plaintiff leave to amend. Plaintiff points out that no previous demurrer has been sustained as to his cause of action. Defendants demurred to both the original and the first amended complaint. Yet, plaintiff apparently amended the original and first amended complaint without the trial court having ruled on either demurrer. Only as to the second amended complaint was a demurrer to plaintiff's cause of action ruled on and sustained.

There is one additional wrinkle. Defendants allege in their brief that plaintiff was informed by the court of its intent to sustain the demurrer and grant leave to amend. Plaintiff is said to have stated that he preferred an appealable order.

The record before us sheds no light on either of these two circumstances. At argument, a stipulation as to what occurred was sought but to no avail. In light of the conflict of understanding and recollection, we feel constrained to say that plaintiff was entitled to an opportunity to amend his complaint, if he can, to supply the deficiencies of pleading ruled upon but once by the trial court.

---

[3]Appellant's brief does not argue nor specifically attempt to show that his complaint alleged any cause of action other than false imprisonment. We have therefore examined plaintiff's allegations only insofar as they purport to state a cause of action for false imprisonment. (6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 425, pp. 4391-4392.)

The judgment is reversed and the cause remanded with direction that plaintiff be given 30 days within which to file an amended complaint.

Reversed with directions.

Kaus, P. J., and Ashby, J., concurred.