[No. B108920. Second Dist., Div. Five. July 28, 1998.]

DAVID MEJIA DEVIS et al., Plaintiffs and Appellants, v.
BANK OF AMERICA N.T. & S.A. et al., Defendants and Respondents.

**[Opinion certified for partial publication.*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts 4. and 5.

**COUNSEL**

Lawrence C. Cruz and Bob Clark, Jr., for Plaintiffs and Appellants.

Joseph R. Brown, Fulbright & Jaworski, Robert M. Dawson and Lisa R. Klein for Defendants and Respondents.

## OPINION

**ARMSTRONG, J.**—This case arises from appellant David Mejia Devis's arrest and imprisonment after respondent Bank of America (Bank) erroneously informed police that he had stolen checks from respondent Patrick McKinney. Devis and his mother, appellant Margarita Devis, who was present when her son was arrested, sued McKinney and the Bank. The complaint attempted to avoid the bar of Civil Code[1] section 47, on privileged communications, by bringing a variety of causes of action, including one against the Bank for negligence in the investigation which led to the report to the police. Nonetheless, respondents' motions for summary judgment were granted. We agree with the trial court that section 47 provides immunity to the Bank. We also affirm the judgment in favor of McKinney, on other grounds.

### Summary of Facts[2]

Many facts in this case are disputed. Those which are undisputed present an astonishing scenario of unfortunate coincidence and things gone wildly awry.

Patrick McKinney had a checking account at the Bank. He also had two acquaintances, David Davis and David Devis. He wrote checks to both of them on the same day, July 7, 1994. The first check was to Davis in the amount of $375. This was a loan. The second was an $85 check to appellant Devis, who sold McKinney some compact discs.

After receiving his $375 check, Davis went to the Bank branch at Sixth and Alvarado. He attempted to cash not only the check McKinney gave him, but an additional check on McKinney's account, also for $375. The signatures did not match and the Bank would not cash the checks. Davis opened an account with one of the checks and left the Bank.

The Bank put a hold on the check, then called McKinney and informed him of the incident. McKinney discovered that some of his checks were missing and instructed the Bank not to honor checks presented by Davis. He

---

[1] All further undesignated statutory references are to that code.

[2] The facts recited are those presented at summary judgment, and all references to testimony are to deposition testimony proffered at that time.

also authorized the placement of a warning on his account. This warning, placed in the Bank's computer, read, "Stolen checks presented at [the Sixth and Alvarado branch] payee David Davis call cust before paying checks." Bank employees interpreted this to mean that McKinney should be called before any check was paid.

The next day, Friday, July 8, Devis stopped at a different Bank branch and attempted to cash the $85 check. He presented a California identification card which included his full name, David Mejia Devis, and endorsed the check in that name. The bank teller, Kren Gasparian, saw the computer warning. He told appellant to wait and sought advice from a supervisor, Josephine Garabedian, who looked at the computer warning and decided to call McKinney.

Gasparian returned to Devis and told him to be patient and wait a little longer. He kept the check and Devis's identification card. Since the Bank had his identification and his check, Devis waited.

Garabedian called McKinney. Bank employees testified that Garabedian told McKinney that David Mejia Devis was at the Bank and had presented a check. She spelled his full name, including his middle name, and gave the check number and the amount of the check. McKinney told Garabedian that Devis was the person responsible for the theft, said that he wanted Devis arrested, and told the Bank to call the police. It was McKinney's idea to call the police.

McKinney remembered it differently: He received a telephone call from a Bank employee who had a heavy accent. She told him that David Davis was in the Bank trying to cash a check, and that he had false identification. She asked whether McKinney wanted him arrested. McKinney said yes. The bank employee did not spell the name or give a middle name.

The police were called. Two officers arrived about 45 minutes later and placed Devis in handcuffs. Devis's mother was in the bank and saw the officers handcuff her son.

Devis declared that moments after he was arrested, Garabedian came into the lobby and said that he had forged the check. Everyone in the lobby heard her make this statement, including his mother.

Garabedian testified that when the police arrived she talked to them in the lobby. She told them of her conversation with McKinney, handed them the check and Devis's identification card, and told them to call McKinney before they came to a decision.

The LAPD (Los Angeles Police Department) arrest report, proffered by the parties at summary judgment,[3] states that on arriving at the Bank, the officers met with Devis, who explained that a friend had given him the check for 10 compact discs, and with Gasparian, who said that he had taken the check from Devis and learned from the computer that the check was stolen. The officers then spoke to McKinney on the telephone. Nothing in the report indicates that Bank employees told the police that the computer warning referred to Davis, or that when McKinney spoke to the police, he knew that Devis, not Davis, was at the Bank. McKinney told officers that he wanted to press charges.

Devis was arrested for a violation of Penal Code section 470, forgery. He spent 72 hours in jail.

Later that afternoon, McKinney learned that Devis had been wrongly arrested. He testified that he made repeated telephone calls to the Bank on Friday afternoon and on Saturday, telling Garabedian that the Bank had made a mistake and should secure Devis's release. The Bank refused to help and told him to call the police. McKinney did so, and was told that the Bank had to call and drop the charges. On Saturday, he went to police offices at Parker Center and was told that nothing could be done until Monday morning.

On Monday, an LAPD detective spoke to McKinney and to the operations manager of the Bank branch at Sixth and Alvarado. After this investigation, Devis was released from jail. No charges were filed against him.

In the first amended complaint at issue here, Devis sued the Bank and McKinney for false imprisonment and negligence in the investigation which led to the report to the police, and sued the Bank for slander. Both David Devis and Margarita Devis sued the Bank and McKinney for negligent and intentional infliction of emotional distress.

Both the Bank and McKinney moved for summary judgment or, in the alternative, summary adjudication.[4] The trial court ruled that all causes of action were barred by section 47, granted summary adjudication as to each cause of action, and dismissed the case.

---

[3]The Bank contends that the arrest report is hearsay and cannot be considered. We do not agree. The Bank proffered the report at summary judgment, complete with a deposition notice from the Bank to the LAPD custodian of records, and a custodian of records declaration.

[4]Although the Bank's legal arguments are stated as though the motion were a demurrer, the motion is clearly one for summary judgment, and we treat it as such.

*Discussion*

*Standard of Review*

■ A motion for summary judgment or summary adjudication is properly granted if all the papers submitted show that there is no triable issue of fact and that the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) A defendant meets the burden of showing that a cause of action has no merit by showing that one or more elements of the cause of action cannot be established or that there is a complete defense to the action. Once the defendant has met that burden, the burden is on the plaintiff to show a triable issue of fact exists. (Code Civ. Proc., § 437c, subd. (o); *Union Bank* v. *Superior Court* (1995) 31 Cal.App.4th 573 [37 Cal.Rptr.2d 653].) Since a motion for summary judgment raises only questions of law regarding the construction and effect of the supporting and opposing papers, we conduct an independent review on appeal. We identify the issues framed by the pleadings and determine whether the moving party has established facts sufficient to negate the claim. If so, we determine whether the opposing party has established that triable issues of material fact exist. (*AARTS Productions, Inc.* v. *Crocker National Bank* (1986) 179 Cal.App.3d 1061, 1064 [225 Cal.Rptr. 203].)

*The case against the Bank*

1. *Section 47*

The controlling issue before us is the application of section 47 to the causes of action in the complaint. We first examine the statute generally, then determine whether it was correctly applied to each cause of action.

■ Section 47 provides that "A privileged publication or broadcast is one made: [¶] . . . [¶] (b) In any (1) legislative proceeding, (2) judicial proceeding, (3) in any other official proceeding authorized by law . . . ." Where the privilege applies, it immunizes defendants from liability for any tort, other than malicious prosecution, which is based on a communication of the specified type. (*Silberg* v. *Anderson* (1990) 50 Cal.3d 205, 215-216 [266 Cal.Rptr. 638, 786 P.2d 365]; *Hunsucker* v. *Sunnyvale Hilton Inn* (1994) 23 Cal.App.4th 1498, 1502 [28 Cal.Rptr.2d 722].)

After some uncertainty (see *Fenelon* v. *Superior Court* (1990) 223 Cal.App.3d 1476 [273 Cal.Rptr. 367]), the weight of authority in this state is that reports made by citizens to police regarding potential criminal activity are communications of the specified type, and fall within the section 47

privilege. (*Hunsucker* v. *Sunnyvale Hilton Inn, supra,* 23 Cal.App.4th at p. 1503; see also *Passman* v. *Torkan* (1995) 34 Cal.App.4th 607, 616-617 [40 Cal.Rptr.2d 291] and *Fremont Comp. Ins. Co.* v. *Superior Court* (1996) 44 Cal.App.4th 867 [52 Cal.Rptr.2d 211], and the cases collected therein.)[5]

The reason for this rule is set out in *Williams* v. *Taylor* (1982) 129 Cal.App.3d 745 [181 Cal.Rptr. 423]: ". . . a communication concerning possible wrongdoing, made to an official governmental agency such as a local police department, and which communication is designed to prompt action by that entity, is as much a part of an 'official proceeding' as a communication made after an official investigation has commenced. [Citation.] After all, '[t]he policy underlying the privilege is to assure utmost freedom of communication between citizens and public authorities whose responsibility it is to investigate and remedy wrongdoing.' [Citation.] In order for such investigation to be effective, 'there must be an open channel of communication by which citizens can call . . . attention to suspected wrongdoing. That channel would quickly close if its use subjected the user to a risk of liability for libel. . . . The importance of providing to citizens free and open access to governmental agencies for the reporting of suspected illegal activity outweighs the occasional harm that might befall a defamed individual. . . .' [Citation.]" (*Id.* at pp. 753-754.)

We concur in that holding, with one exception. Although some recent case law holds that the section 47 privilege is absolute, so that it cannot be defeated by a showing of malice (*Williams* v. *Taylor, supra,* 129 Cal.App.3d at p. 754; *Hunsucker* v. *Sunnyvale Hilton Inn, supra,* 23 Cal.App.4th at p. 1504), we believe that controlling authority establishes that the privilege applies only if the erroneous report to the police is made in good faith. (*Turner* v. *Mellon* (1953) 41 Cal.2d 45, 48 [257 P.2d 15]; *Du Lac* v. *Perma Trans Products, Inc.* (1980) 103 Cal.App.3d 937, 941 [163 Cal.Rptr. 335].) The distinction is not critical here, however, since appellants have not alleged that the Bank acted without good faith.

### 2. *Negligence*

In the complaint, Devis sought to avoid the section 47 privilege by pleading a cause of action for negligence, based on the allegation that the Bank was negligent in conducting the investigation which led to its report to the police. He argues that the section 47 privilege for reports to the police is

---

[5]Appellants' out-of-state authorities, *Deadman* v. *Valley Nat. Bank of Arizona* (1987) 154 Ariz. 452 [743 P.2d 961], and *Godines* v, *First Guar. Sav. & Loan Ass'n* (Miss. 1988) 525 So.2d 1321, do not discuss the application of any privilege, and thus are of no assistance to us here.

not applicable to a cause of action for negligent investigation, prior to the report. We disagree. We know of no case which directly holds that the immunity which protects against tort actions based on erroneous reports to the police extends to a claim of negligence in the investigation which leads to such a report. However, based on the strong public policy behind the privilege, we do not hesitate to so hold. The privilege *must* extend to actions based on negligent investigation, for if it did not, the privilege for reports to the police would be eviscerated.

Allowing a cause of action for negligence in the investigation which leads to a report to the police would be tantamount to allowing a cause of action for error in the report. This is so because an erroneous report to the police will necessarily be based on some investigation, whether it involves telephone calls and review of documents, as it did here, or whether it is the quick visual inspection of a crowd for a purse snatcher which precedes a bystander's cry of "officer, arrest that man." Barring a cause of action for the report, but not the investigation, would leave an individual who makes a report to the police subject to liability if the information given proves to be incorrect. And, as a practical matter, an individual sued for a negligent investigation would be in much the same position as an individual sued for the report itself.

Such a result would discourage reports to the police, contrary to public policy, since individuals would hesitate to make reports if reporting carried the potential for liability. If the privilege for reports to the police is to function meaningfully and advance public policy, it must encompass the investigation which leads to a report. This is especially true because the circumstances under which an individual observes or suspects a crime will frequently involve rapidly unfolding events, conflicting information, quick impressions, uncertainty, and a need for haste, so that accuracy is difficult to ensure and an erroneous report will be a possibility. Here, for example, the Bank undertook an on-the-spot investigation in order to protect its customer and prevent a crime, and in the hope that the perpetrator of an earlier criminal act could be speedily apprehended. If those acts could lead to liability, whether under the rubric of false report or negligent investigation, the Bank would no doubt be reluctant to investigate in future situations.

In sum, if an individual could be sued for negligently performing the acts which lead to a report to the police, the policy of assuring "utmost freedom of communication between citizens and public authorities whose responsibility it is to investigate and remedy wrongdoing" would be seriously compromised. The "open channel of communication" between police and citizens would be closed, and citizens would be discouraged from conveying

information to the police, to the detriment of society as a whole. (*Williams* v. *Taylor, supra,* 129 Cal.App.3d at pp. 753-754.)

Our holding is supported by long-standing case law which holds that the section 47 privilege is given a broad application in furtherance of the public policy it is designed to serve, so that it extends to all torts which are based on a communication of the privileged type. (*Silberg* v. *Anderson, supra,* 50 Cal.3d at pp. 215-216.) Plaintiffs arrested as a result of erroneous reports to the police, made after arguably negligent investigations, have attempted to cast their complaints as ones for slander (*Williams* v. *Taylor, supra,* 129 Cal.App.3d at p. 753), assault, battery, and false imprisonment (*Hunsucker* v. *Sunnyvale Hilton Inn, supra,* 23 Cal.App.4th at p. 1505), interference with economic advantage, intentional infliction of emotional distress, and loss of consortium. (*Fremont Comp. Ins. Co.* v. *Superior Court, supra,* 44 Cal.App.4th at p. 875.) In response to these claims, courts have consistently held that the section 47 privilege protects the reporting individual from liability. We similarly hold that the section 47 privilege protects the Bank from liability for negligence in the investigation which led to its report to the police, as well as from liability for errors in the report itself.

The facts of this case further establish that no meaningful distinction can be drawn between a cause of action based on a report to the police and a cause of action based on the method of arriving at the content of that report. Devis's complaint is at heart one based on the Bank's report to the police, since he alleges that his damages were caused by his arrest and incarceration. Without the Bank's communications to the police, and the subsequent arrest, Devis would have suffered no damage.

Devis argues that the negligence cause of action is also supported by the Bank's failure to secure his release after McKinney called the Bank to say that a mistake had been made and that Devis was not the person who had stolen his checks. In support, Devis cites the rule, stated in the Restatement Second of Torts, that "If an actor knows or has reason to know that by his conduct, whether tortious or innocent, he has caused such bodily harm to another as to make him helpless and in danger of further harm, the actor is under a duty to exercise reasonable care to prevent such further harm." (Rest.2d Torts, § 322.)

Devis cannot recover on this theory. It was undisputed at summary judgment that McKinney attempted to secure Devis's release, but was told that nothing could be done until Monday morning. Thus, even if, as Devis asserts, the Bank breached a duty to take reasonable steps to prevent further harm to him, he suffered no damage from that failure, and has no cause of action based on the breach.

### 3. *Slander*

The section 47 privilege applies to causes of actions for slander. (*Williams* v. *Taylor*, *supra*, 129 Cal.App.3d at pp. 753.) Devis argues, however, that the privilege is not a defense to his cause of action, since the statements were made in a public place, the Bank lobby, and were heard by third persons.

It was undisputed that the Bank's statements were made to the police. In his complaint and at summary judgment, Devis contended that the statements were also heard by Bank employees, his mother, and other individuals, as well as by the police officers. In factual support, Devis relied solely on his own declaration to that effect.

It does not appear that any California case has directly addressed application of the privilege to reports to the police which are incidentally heard by others. However, a similar question has been considered with regard to the section 47 litigation privilege. In *Albertson* v. *Raboff* (1956) 46 Cal.2d 375, 380 [295 P.2d 405], the Supreme Court considered the application of that privilege to the recordation of a notice of lis pendens. The court found that the notice was privileged, since it was a publication in the course of a judicial proceeding, pursuant to the statute, holding that "[i]t would be anomalous to hold that a litigant is privileged to make a publication necessary to bring an action but that he can be sued for defamation if he lets anyone know he brought it . . . ." The court also noted that the statute extended the privilege to reports of judicial proceedings in public journals, and held that the Legislature did not intend that the journals would have greater immunity than the litigants. Thus, a statement which is privileged under the section 47 litigation privilege does not become actionable merely because it is made in public and may be heard or read by nonparticipants in the litigation. It is only a statement made *to* persons unconnected to the litigation, such as the press, which is not privileged. (*Silberg* v. *Anderson*, *supra*, 50 Cal.3d at p. 219; *Rothman* v. *Jackson* (1996) 49 Cal.App.4th 1134, 1143 [57 Cal.Rptr.2d 284].)

We believe that the same rule applies here. Of necessity, it will often be the case that reports to the police will be made under circumstances in which they may be overheard by others, and under hurried or excited circumstances which preclude any possibility of privacy. Public policy is advanced by encouraging an individual who observes a crime to call that fact to the attention of police, even if circumstances make it impossible for the information to be whispered, or communicated in a private place. If the reporting individual were subject to liability when the statements were heard by others, the open channel of communication between citizens and the police furthered by the privilege would quickly close. (*Williams* v. *Taylor*, *supra*,

129 Cal.App.3d at pp. 753-754.) We thus conclude that the fact that a report of a crime made to police may be heard by others does not render the report nonprivileged. Thus, Devis has no cause of action for slander based on the allegation that others in the Bank lobby heard the Bank's report to the police.

4., 5.*

. . . . . . . . . . . . . . . . . . . . . . . . .

### The case against McKinney

McKinney argues that appellants' brief makes no arguments concerning the judgment in his favor, and thus the judgment must be affirmed. We agree. (*Estate of Hoffman* (1963) 213 Cal.App.2d 635, 639 [29 Cal.Rptr. 60].)

### Disposition

The judgment in favor of McKinney is affirmed, as is the judgment in favor of the Bank. Respondents to recover costs on appeal.

Turner, P. J., and Godoy Perez, J., concurred.

A petition for a rehearing was denied August 18, 1998, and appellants' petition for review by the Supreme Court was denied October 28, 1998. Baxter, J., and Chin, J., did not participate therein.

---

*See footnote, *ante*, page 1002.