[No. 42236-7-I.    Division One.    May 17, 1999.]
THÀM THI DANG, ET AL., *Appellants*, v. TOM EHREDT, ET AL., *Respondents*.

*Ha Thu Dao* and *James Beale Gorham*, for appellants.

*Michele Earl-Hubbard* and *John Parnass* (*Alvin Littles*, of counsel); *Scott D. Bissell* and *Theron A. Buck*, for respondents.

ELLINGTON, J. — An innocent person attempted to cash her paycheck at her own bank and found herself arrested. Although she was immediately released when her employer verified the check was valid, she suffered a traumatic and most unfortunate experience, made all the worse because she is from another country and her first language is not English. We reject her lawsuit against the bank and the police, however, because the police officers acted reasonably in light of the information provided to them, and are therefore immune from suit, and the bank has statutory immunity under these circumstances.

## Summary

Tham Thi Dang presented a check from Seattle Filmworks, drawn on First Interstate Bank, for cashing at the branch of Seafirst Bank at which she and her husband maintained a savings account. When the teller scanned the check, a computer alert directed the teller not to cash checks from that account and to notify the bank's fraud

department. The alert appeared because First Interstate had closed Seattle Filmworks' account after several counterfeit checks had been drawn on it and cashed at local banks, including Seafirst. The branch's customer service manager called 911 and reported a possible counterfeit item. The police arrived, investigated, and eventually arrested Ms. Dang and took her to the police station. After arriving at the station, the officers learned from a Filmworks' employee (whom the officer had tried unsuccessfully to contact before the arrest) that the check Ms. Dang attempted to cash was not counterfeit. Accordingly, Ms. Dang was immediately released.

Ms. Dang and her husband sued the City of Seattle, the police department, the individual officers involved (collectively "the city defendants"), and Seafirst and two Seafirst employees (collectively "Seafirst" or "the bank defendants"),[1] alleging false arrest, false imprisonment, deprivation of civil rights, and negligence. We find that the police officers acted reasonably under settled law and in light of the information they possessed, and that they are therefore entitled to qualified immunity from liability under both the common law and 42 U.S.C. § 1983. We further find that the bank, through its employees, did nothing to restrain or otherwise imprison Ms. Dang and that, in any case, the bank is entitled to immunity from liability for its actions under RCW 4.24.510. Accordingly, we affirm the trial court's entry of summary judgment in favor of the city defendants and the bank defendants.

## Facts

In November and December, 1995, several counterfeit payroll checks drawn on Seattle Filmworks' payroll account at First Interstate Bank were cashed at Seafirst branches and other local banks. In late November, First Interstate closed Seattle Filmworks' payroll account. First Interstate sent notice to Seafirst regarding the closure. On

---

[1]The individual bank employees are not parties to this appeal.

December 1, Seafirst's corporate security department programmed an alert into the bank's teller system regarding Seattle Filmworks' checks. The alert identified by number the account from which counterfeit checks were drawn and advised that counterfeit checks from this account were still being deposited into various Seafirst accounts. The alert advised that if a deposit of a check from that account was attempted, the teller was to "contact local pd." The customer service manager of Ms. Dang's branch posted this alert on the wall near his desk.

On December 7, 1995, Ms. Dang presented a Seattle Filmworks' payroll check in the amount of $165.62 for cashing at the branch of Seafirst Bank at which she and her husband maintained a savings account. The check was written from the same account the counterfeit checks had been written from.

When the teller scanned the check Ms. Dang presented, an alert message appeared stating: "Do not cash item—Take photo, keep item, Call Fraud Dept." The teller printed this message, and took it along with the check and Ms. Dang's driver's license to the customer service manager. The manager called Seafirst's loss prevention department and no one answered.[2] The manager, following the directions on the alert posted on his wall, called 911 and advised them of a possible counterfeit item at the branch. He then called First Interstate's customer service department and received verification that the account was closed and that a fraud alert had been posted.

Officers Sharon Stevens and Linda Hill of the Seattle Police Department responded to Seafirst's complaint. Upon arrival at the branch, the officers were directed to the customer service manager, who informed them that a woman had presented two payroll checks to be cashed[3] and that one of them had been flagged as counterfeit. He

---

[2]By this time, it was after 5:30 P.M.

[3]In addition to the Seattle Filmworks' check which represented accrued vacation pay from her former employer, Ms. Dang presented a payroll check from her current employer. The latter check is not involved in this appeal.

showed the officers the computer-generated counterfeit warnings, and identified Ms. Dang as the person who had presented the check. Officer Stevens approached Ms. Dang and asked her about the check. Ms. Dang replied that she was a former employee of Seattle Filmworks and that the check was severance pay.

Officer Stevens returned to the customer service manager, who confirmed that only the Seattle Filmworks check had been flagged as counterfeit and that he had been unable to contact anyone at Seafirst's fraud department. The officer directed him to try again, and this attempt was also unsuccessful. The manager did, however, tell Officer Stevens that someone at First Interstate Bank had confirmed that the account upon which the check was drawn had been closed and "flagged as counterfeit" in First Interstate's system.

Although Officer Stevens believed she had probable cause to arrest Ms. Dang at that point, she "felt something was out of the ordinary," and decided to investigate further. Officer Stevens escorted Ms. Dang into a conference room. Ms. Dang told the officer that her husband was outside, so the officer left the conference room and found him. Ms. Dang's husband offered to retrieve his wife's Seattle Filmworks' pay stubs from their home. By this time the bank was closing and, after conferring with her sergeant, Officer Stevens determined that Ms. Dang should be transported to the police station to continue the investigation. Officer Stevens asked Ms. Dang's husband to meet them at the police station if he found any pay stubs at home.

Before they left the bank, Officer Stevens called Seattle Filmworks, but was unable to reach anyone. She left a message for someone in the payroll department to call her at the police station. Officer Stevens and Officer Hill led Ms. Dang to the patrol car.

Upon arrival at the police station, Officer Stevens learned that a person from Seattle Filmworks' payroll department had called. Officer Hill waited with Ms. Dang in an interview room while Officer Stevens returned the call.

The payroll department employee confirmed that Ms. Dang had been an employee of the company. She also explained that several checks had been stolen in November and that the account from which they were drawn had been closed. She explained that the fact that Ms. Dang had presented the check over a month after its issuance had triggered the counterfeit warning. The payroll employee then confirmed that the check Ms. Dang had presented was not counterfeit. By this time, Ms. Dang's husband had arrived at the police station. Officer Stevens informed them of what she had learned, and Ms. Dang and her husband left the police station.

Ms. Dang and her husband sued the bank defendants and the city defendants. Against the bank defendants, they alleged negligence and false imprisonment. Against the city defendants, they alleged common law false arrest and false imprisonment as well as a claim under 42 U.S.C. § 1983. All the defendants moved for summary judgment. The trial court granted their motions and dismissed the plaintiffs' claims.

## Discussion

### Motion to Strike

The bank defendants filed a motion to strike portions of Ms. Dang's opening and reply briefs and for sanctions. Ms. Dang's assignment of error regarding the bank defendants is: "The Superior Court further erred in dismissing defendant Bank of America, d/b/a Seafirst Bank, on grounds that it is entitled to statutory immunity under RCW 4.24.510." Appellant's opening brief contains no statement of an issue relating to this assignment of error,[4] although the brief does include her argument that the immunity statute does not apply to Seafirst's actions other than the telephone call to the police.

---

[4]*See* RAP 10.3(a)(3) (the appellant's brief must contain "[a] separate concise statement of each error a party contends was made by the trial court, together with the issues pertaining to the assignments of error").

Seafirst moves to strike arguments on this issue made by Ms. Dang for the first time in her reply brief, in which she asserts that (1) RCW 4.24.510 affords protection only to individuals, not corporations; (2) Seafirst acted in bad faith and is therefore not entitled to immunity; and (3) the statute is unconstitutional because it violates the "open courts" provision of the Washington Constitution, article I, section 10.

These arguments are raised in this court for the first time in the reply brief, and were never raised before the trial court. Out of fairness to the trial court and opposing parties, such arguments are not considered.[5]

Seafirst also argues that the portions of Ms. Dang's opening brief addressing the dismissal of her false imprisonment claim against the bank defendants based on common law should be stricken. Seafirst bases this argument on the fact that Ms. Dang assigned error only to the court's dismissal of the claim based on RCW 4.24.510, not to the court's conclusion that "the facts do not establish Seafirst's requisite involvement in any false imprisonment of plaintiff" and the court's rejection of Ms. Dang's argument that the bank's "stalling" of Ms. Dang and retention of her checks and driver's license constituted a false imprisonment. We decline to strike these portions of the opening brief. Ms. Dang's brief clearly discloses that she was challenging the court's dismissal of the bank defendants on all grounds upon which the court relied, not just on the statute.[6] The bank responds to this argument in its brief on appeal, and does not allege that it was prejudiced in its attempt to do so by any inadequacy in Ms. Dang's assignment of error.

---

[5]See *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992) ("An issue raised and argued for the first time in a reply brief is too late to warrant consideration."); *State v. Peerson*, 62 Wn. App. 755, 778, 816 P.2d 43 (1991) (a reviewing court need not address issues of constitutional magnitude first raised in a reply brief).

[6]See *Honegger v. Yoke's Wash. Foods, Inc.*, 83 Wn. App. 293, 295 n.2, 921 P.2d 1080 (1996) ("When a brief clearly discloses what action is considered erroneous and the opposing party has had no difficulty responding to the issue, an appellate court may consider the party's argument.").

Finally, the bank requests an award of sanctions against Ms. Dang on several grounds, pursuant to RAP 10.7. That rule provides that the appellate court "will ordinarily impose sanctions on a party or counsel for a party who files a brief which fails to comply" with RAP 10.3 and 10.4, dealing with requirements for content, style, legibility, and length. RAP 10.7. The only asserted basis for sanctions that falls within the scope of RAP 10.3 or 10.4 is Ms. Dang's attempt to raise new issues in the reply brief. We have declined to address these issues; further sanctions are inappropriate.

## Standard of Review

Ms. Dang's claims against both the city defendants and the bank defendants were dismissed on summary judgment. We review the trial court's orders granting summary judgment de novo, engaging in the same inquiry as the trial court.[7]

## The City Defendants

## 42 U.S.C. § 1983

Ms. Dang sought relief against the city defendants under 42 U.S.C. § 1983 on the ground that the officers deprived her of her civil rights when they arrested her.[8] Probable cause to arrest is a complete defense to the liability of a police officer for an action under section 1983 arising out of an arrest.[9] An officer has probable cause to arrest when the officer has knowledge of facts and circum-

---

[7]*Marquis v. City of Spokane*, 130 Wn.2d 97, 105, 922 P.2d 43 (1996).

[8]42 U.S.C. § 1983 reads:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

[9]*Owen v. City of Independence*, 445 U.S. 622, 637, 100 S. Ct. 1398, 63 L. Ed. 2d 673 (1980).

stances sufficient to cause a reasonable person to believe that an offense has been committed.[10] Law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to qualified immunity.[11] Whether a police officer is entitled to qualified immunity from liability under section 1983 for alleged constitutional violations depends on whether a reasonable officer could have believed the officer's actions were lawful in light of clearly established law and the information the officer possessed.[12] The standard is one of objective legal reasonableness, that is, whether the officer acted reasonably under settled law under the circumstances, not whether another reasonable, or more reasonable, interpretation of events can be constructed after the fact.[13]

The officers knew that the account on which the check was drawn had been closed because of counterfeit checks, that such checks had previously been presented for payment to Seafirst, and that First Interstate had confirmed the account remained closed and flagged as counterfeit. The bank was closing, and the officers were unable, in spite of their efforts, to verify Ms. Dang's statements. Their actions are not to be judged in hindsight by the facts ultimately established, but by the facts known to the officers when they made their decision. We conclude that, in

---

[10]*State v. Knighten*, 109 Wn.2d 896, 903, 748 P.2d 1118 (1988) (noting that, at the time of the arrest, the officer need not possess evidence to prove each element of the crime beyond a reasonable doubt).

[11]*Anderson v. Creighton*, 483 U.S. 635, 641, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987); *Hunter v. Bryant*, 502 U.S. 224, 227, 112 S. Ct. 534, 116 L. Ed. 2d 589 (1991). Based on this authority, we reject Ms. Dang's assertion that the issue of qualified immunity merges with the issue of probable cause, so that a finding that an officer lacked probable cause to arrest is dispositive of the issue of qualified immunity.

[12]*Anderson*, 483 U.S. at 641.

[13]*Hunter*, 502 U.S. at 228; *see also Hocker v. Woody*, 95 Wn.2d 822, 825, 631 P.2d 372 (1981) (officer is immune unless he or she knew or reasonably should have known that the action taken would violate the constitutional rights of the person affected, or the officer took the action with malicious intent to cause a deprivation of constitutional rights or other injury; officer's belief that his or her conduct was constitutional must have been reasonable).

light of the information they possessed, the officers acted reasonably under settled law under the circumstances, and are entitled to qualified immunity from liability under section 1983.[14]

### Common law false arrest

■ A police officer has qualified immunity from liability for false arrest under common law when he or she carries out a statutory duty, according to procedures dictated by statute and the officer's superiors, and acts reasonably.[15] There is nothing in the record to indicate that in responding to the bank's report of a possible fraud, the officers failed to carry out a statutory duty, or carried out such a duty in a manner contrary to statute or internal procedures. As discussed with respect to the issue of the officers' qualified immunity from suit under section 1983, under the information known to them and under settled law, the officers acted reasonably. Thus, the officers were entitled to qualified immunity from liability for false arrest under common law.

### Conclusion as to City Defendants

We conclude that in arresting Ms. Dang, the officers acted reasonably under settled law and in light of the information they possessed. The officers are therefore entitled to qualified immunity from liability both under section 1983 and common law. The trial court properly entered summary judgment in favor of the city defendants.[16]

---

[14]Because we find that the officers acted reasonably and are entitled to qualified immunity, we need not address whether they had probable cause to arrest Ms. Dang.

[15]*Guffey v. State*, 103 Wn.2d 144, 152, 690 P.2d 1163 (1984), *overruled on other grounds by Babcock v. State*, 116 Wn.2d 596, 809 P.2d 143 (1991).

[16]The trial court dismissed the claims against the police department and the city solely on the ground that the individual officers were entitled to qualified immunity. Ms. Dang does not set forth a separate argument why her claim against the city defendants other than the officers should not have been dismissed.

### The Bank Defendants

RCW 4.24.510

■ The trial court granted summary judgment in favor of the bank defendants[17] on the ground that under both statutory and common law, a person is not liable for merely communicating information to a law enforcement officer. Under common law, liability will not be imposed on a defendant who does nothing more than detail his or her version of the facts to a police officer and ask the officer for assistance, thus leaving it to the officer to determine the appropriate response.[18]

The rule of nonliability has been codified:

> A person who in good faith communicates a complaint or information to any agency of federal, state, or local government regarding any matter reasonably of concern to that agency shall be immune from civil liability on claims based upon the communication to the agency. A person prevailing upon the defense provided for in this section shall be entitled to recover costs and reasonable attorneys' fees incurred in establishing the defense.[19]

The statute was enacted in recognition of the fact that information provided by citizens concerning potential wrongdoing is vital to effective law enforcement, and that the threat of a civil action for damages could be a deterrent to citizens who wish to report such information to law enforcement agencies.[20]

Ms. Dang interprets the phrase "immune from civil liability on claims based upon the communication" as used in RCW 4.24.510 to mean that the bank has immunity only with respect to its call to the police, not its retention of Ms. Dang's driver's license and its attempt to keep her in the

---

[17]Ms. Dang does not appeal from the trial court's dismissal of her claims against the bank's branch manager and customer services manager.

[18]*McCord v. Tielsch*, 14 Wn. App. 564, 566, 544 P.2d 56 (1975) (citing *Parker v. Murphy*, 47 Wash. 558, 92 P. 371 (1907)).

[19]RCW 4.24.510. The bank does not request attorney fees under this statute.

[20]RCW 4.24.500.

branch while the police were summoned. Although no Washington court has addressed this issue, we are persuaded that Ms. Dang's interpretation of the statute is erroneous. A more reasoned interpretation, and the one that is in keeping with the purpose for which the statute was enacted, is that the term "based upon" as used in RCW 4.24.510 refers to the starting point or foundation of the claim.

Two cases decided under California's immunity statute are instructive. Under that statute, reports made by citizens to police regarding potential criminal activity are privileged, and a person who makes such a report is immune from liability for a tort based on the report.[21] One of the cases, *Devis v. Bank of America*,[22] is similar to the present case in that it involved the wrongful arrest of a bank customer after the customer attempted to cash a check the bank believed to be forged, when in fact the check was valid. The bank's employees attempted to detain the plaintiff until the police responded to their report of a forgery.

The *Devis* court applied the immunity statute and affirmed summary judgment in favor of the bank on the plaintiff's claim alleging negligence in the bank's conduct of the investigation. The court rejected the plaintiff's argument that while a cause of action based on a report to the police may be immunized under the statute, the same is not true with respect to a cause of action based on the method of arriving at the content of the report. The court noted that without the bank's communication to the police and the subsequent arrest, the plaintiff would have suffered no harm. Thus, the court concluded, the plaintiff's complaint was "at heart one based on the Bank's report to

---

[21]The statute provides that a privileged publication or broadcast is one made in a legislative, judicial, or any other official proceeding authorized by law. CAL. CIV. CODE § 47 (quoted in *Devis v. Bank of Am.*, 65 Cal. App. 4th 1002, 77 Cal. Rptr. 2d 238, 242 (1998)). California courts have interpreted the statute as immunizing defendants from liability for any tort, other than malicious prosecution, "which is *based on* a communication of the specified type" made in good faith. (Emphasis added.) *Devis*, 77 Cal. Rptr. 2d at 242 (citing cases).

[22]65 Cal. App. 4th 1002, 77 Cal. Rptr. 2d 238 (1998).

the police," since the damages claimed were allegedly caused by the plaintiff's arrest and incarceration.[23] The court rejected the plaintiff's argument that the immunity statute did not apply to negligence claims based on action other than the actual call or report to the police. Although the court found no case directly holding that the statutory immunity extends to a claim of negligence in the investigation which leads to the report to the police, the court found strong public policy in favor of so holding:

> Allowing a cause of action for negligence in the investigation which leads to a report to the police would be tantamount to allowing a cause of action for error in the report.
>
> . . . .
>
> . . . [I]f an individual could be sued for negligently performing the acts which lead to a report to the police, the policy of assuring utmost freedom of communication between citizens and public authorities whose responsibility it is to investigate and remedy wrongdoing would be seriously compromised. The open channel of communication between police and citizens would be closed, and citizens would be discouraged from conveying information to the police, to the detriment of society as a whole.[24]

We agree with the court's reasoning in *Devis* and reject Ms. Dang's argument that the immunity afforded by RCW 4.24.510 is limited to the bank's telephone call to the police. As the *Devis* court noted, allowing a cause of action for the events surrounding the communication to the police, while immunizing the communication itself, would thwart the policies and goals underlying the immunity statute. Moreover, as in *Devis*, no meaningful distinction can be drawn between the cause of action based on the bank's communication to the police and a cause of action based on the method of arriving at the content of the communication. All of the actions of which Ms. Dang complains and

---

[23]*Devis*, 77 Cal. Rptr. 2d at 244.

[24](Internal quotation marks omitted.) (Citation omitted.) *Devis*, 77 Cal. Rptr. 2d at 243.

all of the damages she claims to have suffered stem from (that is, are "based upon") the bank's telephone call to the police.[25]

The other California case, *Hunsucker v. Sunnyvale Hilton Inn*,[26] involved an arrest of a hotel guest when a maid reported seeing a person brandishing a gun in the room. As it turned out, the report was untrue and the gun was a plastic toy, but a person with the same name as the guest had an outstanding felony warrant for assault and an arrest record that included weapons violations. The guest was detained for about 30 minutes until the police searched the room and eventually discovered that the guest was not the person with the outstanding warrant.

The guest sued the hotel for false imprisonment. In affirming summary judgment in favor of the hotel, the appellate court rejected the plaintiff's argument that the immunity statute applied only to defamation actions, or similar actions such as ones for misrepresentation or invasion of privacy, but not his false imprisonment claim. First, the court noted that the statute had been interpreted to bar all tort actions, except for malicious prosecution, that were based upon a communication enumerated in the statute. Further, the court concluded, it was indisputable that all the actions out of which the plaintiff's complaint arose were a result of the communication from the hotel manager to the police and should be encompassed within the scope

---

[25]Although it did not involve the construction of an immunity statute, the case of *Werre v. David*, 275 Mont. 376, 913 P.2d 625 (1996), is instructive as to the meaning of "based upon." In that case, the court construed a statute addressing the time limit in which a person who has suffered injury as a result of childhood sexual abuse must bring an action "based on" intentional conduct. One party argued that "based on" meant "equal to," while the other party argued that it meant a starting point for determination. The court, basing its decision on case law and the dictionary definition of "base," agreed with the latter argument. Thus, the court held that an action is "based on intentional conduct" if the intentional sexual abuse is the starting point or foundation of the claim. *Werre*, 913 P.2d at 631. We agree with this interpretation of the term "based on." Under it, all of the bank's actions of which Ms. Dang complains are properly characterized as "based upon" the communication to the police.

[26]23 Cal. App. 4th 1498, 28 Cal. Rptr. 2d 722 (1994).

of the immunity.[27] Thus, the court held, the hotel was immune from liability as a matter of law for its communication to the police or for any subsequent conduct of the police in detaining the guest. We agree with the court's reasoning in this case as well.[28]

■ Ms. Dang also argues that RCW 4.24.510 applies only in defamation actions. She bases this assertion on *Gilman v. MacDonald*,[29] which happened to be a defamation action. It does not follow, however, that those are the only actions in which RCW 4.24.510 is applicable, and *Gilman* did not so hold, nor does the statute so state. On the contrary, to interpret the statute so that immunity turns on the characterization of the claim would make little sense in light of the clear purpose of the statute to encourage communication between citizens and law enforcement agencies. In the present case, for example, all the actions of which Ms. Dang complains were the result of the bank's communication to the police. Had the bank not summoned the police and relayed the information to them, Ms. Dang would have no cause of action against either the bank defendants or the city defendants.

## False imprisonment

■ ■ Violation of one's right of personal liberty or restraint without legal authority are "the gist" of an action for false imprisonment.[30] A person is restrained or imprisoned when he or she " 'is deprived of either liberty of movement or freedom to remain in the place of his lawful choice; and such restraint or imprisonment may be accomplished by physical force alone, or by threat of force, or by conduct

---

[27]*Hunsucker*, 28 Cal. Rptr. 2d at 724-25.

[28]Ms. Dang relies heavily upon *Deadman v. Valley Nat'l Bank*, 154 Ariz. 452, 743 P.2d 961 (1987), in which the Arizona court held that the issue of false arrest by the bank was for the jury. But *Deadman* did not involve an immunity statute and thus is not helpful here.

[29]74 Wn. App. 733, 875 P.2d 697 (1994).

[30]*Bender v. City of Seattle*, 99 Wn.2d 582, 591, 664 P.2d 492 (1983).

reasonably implying that force will be used.' "[31] We find no evidence in the record that the bank used or threatened to use force against Ms. Dang, or that the bank deprived her of her liberty of movement. Ms. Dang's false imprisonment claim thus fails.

Conclusion as to Bank Defendants

We conclude that all of the bank's actions upon which Ms. Dang bases her claims against the bank defendants are protected by the immunity afforded by RCW 4.24.510. Thus, the bank cannot, as a matter of law, be held liable for damages allegedly resulting from those actions. We further find no evidence in the record to support Ms. Dang's claim that the bank defendants falsely imprisoned her. Accordingly, we affirm the trial court's order granting summary judgment in favor of the bank defendants.

Affirmed.

AGID, A.C.J., and APPELWICK, J., concur.

Reconsideration denied June 28, 1999.

Review denied at 139 Wn.2d 1012 (1999).

---

[31]*Bender,* 99 Wn.2d at 591 (quoting *Kilcup v. McManus,* 64 Wn.2d 771, 777, 394 P.2d 375 (1964)).