# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| TRACY MICHELLE SIMMS and DANIEL JERIMIAH SIMMS, | DIVISION ONE |
| Appellants, | No. 81493-1-I |
| v. | UNPUBLISHED OPINION |
| DARYL B. FISH, | |
| Respondent. | |

DWYER, J. — Daniel Simms appeals from the trial court's order dismissing his claims against Daryl Fish that stem from events surrounding the nonparent custody proceedings for Simms's minor child, D.R.K. We affirm.

I

Daniel Simms is D.R.K.'s father.[1] Simms has been incarcerated for the entirety of D.R.K.'s life, and he is expected to remain so until after D.R.K. reaches adulthood. Beginning in 2007, Simms cultivated a relationship with D.R.K. by buying gifts, contributing to expenses, writing letters, making telephone calls, and having both video and in-person visits. Although Simms alleges that he had a substantial existing family relationship with D.R.K., his parental role was limited by his incarceration.

---

[1] These facts are taken from Simms's complaint and documents referenced therein. "'Documents whose contents are alleged in a complaint but which are not physically attached to the pleading may . . . be considered in ruling on a . . . motion to dismiss.'" Trujillo v. Nw. Tr. Servs., Inc., 183 Wn.2d 820, 827 n.2, 355 P.3d 1100 (2015) (first alteration in original) (quoting Rodriguez v. Loudeye Corp., 144 Wn. App. 709, 726, 189 P.3d 168 (2008)).

In January 2015, D.R.K.'s mother died.  D.R.K. began living with D.R.K.'s grandmother, Sylvia Finne.  Finne petitioned for nonparent custody of D.R.K.  Simms's wife, Tracy Simms,[2] also petitioned for custody.  Tracy's petition was denied.  Finne was granted nonparent custody of D.R.K.

Simms's visitation with D.R.K. was suspended in January 2015.  When visitation resumed in August 2015, Simms had at most two monthly visits of four hours in duration each with D.R.K.  Then, between February 2016 and March 2018, D.R.K. had no visits with Simms.  Simms alleges that Finne did not want Simms, Tracy, or anyone else in the paternal family to have a relationship with D.R.K.

According to Simms, Finne introduced D.R.K. to Daryl Fish in 2015.  Simms alleges that Finne and Fish had the "ultimate goal" of alienating Simms from D.R.K. by implanting falsehoods in D.R.K.'s mind and acting as a buffer between Simms and D.R.K.  Such falsehoods allegedly included that Simms was "scary" and got "mad."  Simms further alleges that Fish coached D.R.K. to tell falsehoods to a psychologist.

In May 2018, Finne died.  D.R.K. began living with Fish.  Simms alleges that Fish did not tell Simms about Finne's death for eight days.  After Simms learned of Finne's death, Simms demanded that D.R.K. live with the paternal family.  Fish did not accede to the demand, and D.R.K. continued to live with Fish.  Instead of acceding, Fish filed for an immediate restraining order, which was granted on June 1, 2018, in the Snohomish County Superior Court.  Among

---

[2] Because Daniel and Tracy Simms share the same last name, we refer to Tracy by her first name.  No disrespect is intended.

other provisions, the order granted Fish temporary sole decision-making authority on behalf of D.R.K. Simms alleges that the restraining order was based on falsehoods and that Fish's actions both made Simms physically sick and altered his life permanently.

Fish then petitioned the Snohomish County Superior Court for nonparent custody of D.R.K. Tracy also petitioned for custody. The superior court held a trial on both petitions over two days in May 2019. Simms participated pro se by telephone as the respondent. At the conclusion of the trial, the court granted Fish's petition, denied Tracy's petition, and entered findings and conclusions.

Many of the allegations in Simms's current complaint directly conflict with the trial court's findings and conclusions in the custody proceeding. The custody court's findings included that (1) D.R.K. requested a therapist before visiting Simms in April 2018 for help coping with the distress of the impending visit, (2) Simms's contact with D.R.K. hindered D.R.K.'s development, (3) D.R.K. reported that Simms is "scary and gets really mad," (4) D.R.K. told multiple individuals that he does not want to have contact with Simms, (5) Simms has had a minimal relationship with D.R.K, and (6) it would be a clear detriment to D.R.K. if D.R.K. did not continue to live with Fish.

Simms appealed from the trial court's order granting Fish custody of D.R.K. We affirmed.[3]

Simms and Tracy filed their first complaint in this lawsuit as co-plaintiffs on January 28, 2020, alleging 63 claims against Fish. On February 20, 2020, the

---

[3] In re Custody of D.R.K., No. 80168-6-I (Wash. Ct. App. Nov. 2, 2020) (unpublished), https://www.courts.wa.gov/opinions/pdf/801686.pdf.

Simmses amended their complaint, adding two additional claims. The Simmses also moved for a mental examination of D.R.K.

On March 2, 2020, Fish moved to dismiss the lawsuit, noting the motion for a hearing on March 10, 2020. The Simmses moved for additional time to respond. To accommodate this request, Fish re-noted his motion to dismiss for March 19, 2020. The Simmses filed a response to the originally-noted motion. After the motion to dismiss was re-noted, the Simmses filed a motion to supplement their response. The trial court heard the motion to dismiss as scheduled on March 19, 2020, without oral argument. After entertaining Fish's motion, the court dismissed the Simmses' claims with prejudice and denied leave to amend.

On April 10, 2020, the Simmses filed a motion for reconsideration of the trial court's order of dismissal, with a proposed second amended complaint attached. The Simmses failed to properly note the motion for a hearing, and the trial court never heard or ruled on the motion.

On May 7, 2020, the Simmses filed a CR 60(b) motion for relief from the order of dismissal, noting the motion for a hearing on May 18, 2020. The trial court heard the motion as scheduled, without oral argument, and denied the motion.

Simms appeals[4] from the trial court's order of dismissal.[5]

---

[4] Although the signatures of both Simms and Tracy were on the notice of appeal, only Simms filed any appellate briefing. Simms is a pro se litigant and cannot represent Tracy or her interests. Thus, we proceed as though only Simms appealed from the trial court's order. Tracy's appeal is deemed abandoned.

[5] Simms also appeals from the trial court's denial of his CR 60 motion. However, Simms did not include any arguments or citations to authority related to CR 60 in his appellate briefing. "Such '[p]assing treatment of an issue or lack of reasoned argument is insufficient to merit judicial

II

We must first decide whether this appeal is properly taken. Fish contends that we should dismiss Simms's appeal as untimely pursuant to RAP 18.8(b). Because an order of our Supreme Court precludes the application of RAP 18.8(b) to this appeal, we disagree.

To be timely, a notice of appeal must be filed within 30 days of a trial court's final decision. RAP 5.2(a); Schaefco, Inc. v. Columbia River Gorge Comm'n, 121 Wn.2d 366, 367, 849 P.2d 1225 (1993). Ordinarily, RAP 18.8(b) permits an appellate court to extend the time for a party to file a notice of appeal only "in extraordinary circumstances and to prevent a gross miscarriage of justice." RAP 18.8(b). "RAP 18.8[b] expressly requires a narrow application." Beckman v. Dep't of Soc. & Health Servs., 102 Wn. App. 687, 693, 11 P.3d 313 (2000). This is so because, ordinarily, "the desirability of finality of decisions outweighs the privilege of a litigant to obtain an extension of time." RAP 18.8(b).

But these are not ordinary times. Our Supreme Court has recognized that the emergency conditions arising from the COVID-19 pandemic may pose difficulties "for litigants making a good faith effort to timely seek appellate review."[6] Accordingly, the court suspended RAP 18.8(b) "as to all notices of

_____

consideration.'" West v. Thurston County, 168 Wn. App. 162, 187, 275 P.3d 1200 (2012) (alteration in original) (quoting Holland v. City of Tacoma, 90 Wn. App. 533, 538, 954 P.2d 290 (1998)); see also Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992) (declining to consider unsupported arguments).

[6] Order, No. 25700-B-611, In re Suspension of RAP 18.8(b) and (c) in Response By Washington State Appellate Courts to the COVID-19 Public Health Emergency, (Wash. Apr. 2, 2020).

appeal . . . due for filing on or after March 27, 2020."[7] "[D]uring the period of time RAP 18.8(b) is suspended, all motions for extension of time will be decided in accordance with the 'ends of justice' standard set forth in RAP 18.8(a)."[8] This standard permits an appellate court, on its own initiative or on motion of a party, to "waive or alter the provisions of any of these rules and enlarge or shorten the time within which an act must be done in a particular case in order to serve the ends of justice." RAP 18.8(a).

Simms is incarcerated and proceeding pro se. We recognize that Simms faces difficulties above and beyond other litigants who are not similarly situated, and these difficulties have been exacerbated by the emergency conditions arising from the COVID-19 pandemic. Simms contends that he did not receive notice of the trial court's March 19, 2020 order of dismissal, which prevented him from timely filing a motion for reconsideration. When Simms ultimately filed an untimely motion for reconsideration 22 days later, on April 10, 2020, he did not properly note the motion for a hearing, and the trial court never addressed it. A timely and properly filed motion for reconsideration would have extended the time for Simms to file a notice of appeal. RAP 5.2(e). Given the extraordinary circumstances, it is in the interest of justice to enlarge the time within which Simms was required to file his notice of appeal.

We thus decline to dismiss this appeal as untimely.

---

[7] Order, No. 25700-B-611, In re Suspension of RAP 18.8(b) and (c) in Response By Washington State Appellate Courts to the COVID-19 Public Health Emergency, (Wash. Apr. 2, 2020).

[8] Order, No. 25700-B-611, In re Suspension of RAP 18.8(b) and (c) in Response By Washington State Appellate Courts to the COVID-19 Public Health Emergency, (Wash. Apr. 2, 2020).

III

A trial court's ruling granting a motion to dismiss pursuant to CR 12(b)(6) is a question of law that we review de novo. Cutler v. Phillips Petrol. Co., 124 Wn.2d 749, 755, 881 P.2d 216 (1994). Dismissal is warranted only when the plaintiff cannot prove "'any set of facts which would justify recovery.'" Kinney v. Cook, 159 Wn.2d 837, 842, 154 P.3d 206 (2007) (quoting Tenore v. AT&T Wireless Servs., 136 Wn.2d 322, 330, 962 P.2d 104 (1998)). We presume the facts alleged in the complaint are true and may consider hypothetical facts, consistent with the complaint, that are not part of the record. Kinney, 159 Wn.2d at 842. However, we "need not accept legal conclusions as correct." Haberman v. Wash. Pub. Power Supply Sys., 109 Wn.2d 107, 120, 744 P.2d 1032, 750 P.2d 254 (1987). "The purpose of CR 12(b)(6) is to weed out complaints where, even if that which plaintiff alleges is true, the law does not provide a remedy." Markoff v. Puget Sound Energy, Inc., 9 Wn. App. 2d 833, 839, 447 P.3d 577 (2019), review denied, 195 Wn.2d 1013 (2020).

IV

Simms asserts that the trial court erred in granting Fish's CR 12(b)(6) motion to dismiss. At the outset, we note that pro se litigants are held to the same standards as attorneys. In re Marriage of Olson, 69 Wn. App. 621, 626, 850 P.2d 527 (1993). To comply with the Rules of Appellate Procedure, an appellant's brief must contain "argument in support of the issues presented for review, together with citations to legal authority and references to relevant parts of the record." RAP 10.3(a)(6). Many of Simms's assertions are not supported

by citations to relevant parts of the record or are in direct conflict with findings in D.R.K.'s custody proceeding. Simms also makes some assertions about legal authority that are untrue or not supported by citations. With these considerations in mind, we address Simms's assignments of error.

A

Simms first contends that the trial court erred in finding that Fish did not have an affirmative duty to Simms under RCW 13.32A.082. This alleged duty, according to Simms, supports his claim of negligence. Because this statute did not impose an affirmative duty on Fish to Simms, we disagree.

In an action for negligence, a plaintiff must prove four elements: (1) the existence of a duty, (2) breach of that duty, (3) resulting injury, and (4) proximate cause. Degel v. Majestic Mobile Manor, Inc., 129 Wn.2d 43, 48, 914 P.2d 728 (1996). "The existence of a duty may be predicated upon statutory provisions or on common law principles." Degel, 129 Wn.2d at 49. Whether a duty exists is a question of law. Degel, 129 Wn.2d at 48.

Simms relies on RCW 13.32A.082 to support his contention that Fish had a duty to Simms. Under this statute,

> any person . . . that, without legal authorization, provides shelter to a minor and that knows at the time of providing the shelter that the minor is away from a lawfully prescribed residence or home without parental permission, shall promptly report the location of the child to the parent, the law enforcement agency of the jurisdiction in which the person lives, or the department [of children, youth, and families (DCYF)].

RCW 13.32A.082(1)(a). Simms asserts, without citation to authority, that "[t]he stare decisis of the Honorable Washington Supreme Court and the United States

Supreme Court is clear, they state that the word 'shall' in Statutes presumptively imposes an affirmative duty" on Fish. By failing to notify Simms about D.R.K.'s whereabouts after Finne died, Simms contends, Fish violated his purported affirmative duty to Simms.

Even assuming that Simms is correct by asserting that RCW 13.32A.082 could impose a duty sufficient to support a negligence action, it could not impose such a duty in favor of Simms. RCW 13.32A.082 mandates notification to any of three specific entities: (1) "the parent," (2) law enforcement, or (3) DCYF. The term "parent" in chapter 13.32A RCW is explicitly defined as "the parent or parents who have the legal right to custody of the child," including the child's "custodian or guardian." RCW 13.32A.030(15). In his complaint, Simms asserts, without supporting citation, that Simms had the "authority to have custody" of D.R.K. "as a matter of law and fact" and that Simms granted such authority to Tracy after Finne died. Simms's unsupported legal conclusions are insufficient to demonstrate that he had the legal right to custody. Simms has cited no authority to support the proposition that a parent without the legal right to custody is granted that right by operation of law when a child's custodian dies. Because Simms does not—and as a matter of law cannot—allege that he had the legal right to custody of D.R.K., he is not "the parent" under RCW 13.32A.082 and no duty could have arisen in his favor.

The trial court thus correctly dismissed Simms's negligence claim.

B

Relying on the same duty allegedly imposed by RCW 13.32A.082, Simms asserts that the trial court erred in dismissing his fraudulent concealment claim. Simms specifically contends that Fish fraudulently concealed D.R.K.'s location from him in violation of the alleged statutory duty. Because no duty could have arisen in favor of Simms, the trial court did not err by dismissing this claim.

A plaintiff can establish fraudulent concealment by either (1) pleading and proving the nine elements of fraud, or (2) showing that the defendant breached an affirmative duty to disclose a material fact. Crisman v. Crisman, 85 Wn. App. 15, 21, 931 P.2d 163 (1997). A duty to disclose material facts can arise from a statutory duty, a fiduciary or quasi-fiduciary relationship, a special relationship of trust and confidence, or reliance on another's superior specialized knowledge and experience. Colonial Imports, Inc. v. Carlton Nw., Inc., 121 Wn.2d 726, 732, 853 P.2d 913 (1993).

Simms did not undertake to plead and prove the nine elements of fraud. To support his fraudulent concealment claim, Simms relies solely on the same statutory duty to disclose that allegedly arose from RCW 13.32A.082. Fish breached this alleged duty, according to Simms, because Fish failed to disclose D.R.K.'s location to Simms. However, as explained above, Simms is not "the parent" under RCW 13.32A.082 because he does not—and could not—allege that he has the legal right to custody of D.R.K. Accordingly, no duty to disclose D.R.K.'s whereabouts to Simms could have arisen, and the trial court did not err by dismissing the claim of fraudulent concealment.

10

C

Simms next contends that the trial court erred in dismissing his tort claim for alienation of a child's affection or, formulated differently, his statutory claim of injury or death of a child under RCW 4.24.010. Simms alleges, without citation to authority, that these claims "are indistinguishable for the purposes of this appeal." In fact, the claims are distinct. The trial court did not err in dismissing Simms's claims under either formulation.

1

To prevail on a common law tort claim for the alienation of a child's affections,[9] a plaintiff must prove the existence of (1) a family relationship, (2) a malicious interference with the relationship by a third person, (3) an intention on the part of the third person that such interference result in a loss of affection or family association, (4) a causal connection between the third parties' conduct and the loss of affection, and (5) damages resulting from the conduct. Strode v. Gleason, 9 Wn. App. 13, 14-15, 20, 510 P.2d 250 (1973). "The maliciousness that need be shown is an unjustifiable interference with the relationship between the parent and the child." Strode, 9 Wn. App. at 20. It is not generally possible to establish malicious interference when the alleged tortfeasor is acting under the authority of law. Babcock v. State, 112 Wn.2d 83, 107, 768 P.2d 481 (1989).

---

[9] Simms references "Malicious Interference with the Parental-Child Relationship" along with "Alienation of a Child's Affections." Both refer to the same intentional tort. See Grange Ins. Ass'n v. Roberts, 179 Wn. App. 739, 765, 320 P.3d 77 (2013) (citing to Strode v. Gleason, 9 Wn. App. 13, 14-15, 20, 510 P.2d 250 (1973), for the elements of malicious interference with a parent-child relationship).

In support of this tort claim, Simms alleges that: (1) Finne introduced Fish to D.R.K. without Simms's consent and "with an intent[,] purpose, and ultimate goal of alienating the affections of the child towards" Simms; (2) Fish invaded Simms's privacy "by willfully and offensively opening, reading, and responding, to [Simms's] private communications (postal letters) with the child"; (3) Fish took three cell phones from D.R.K. "to further alienate and interfere with the parental-child bond"; and (4) Fish "filed a 'Restraining Order' against [Simms] under false pretenses for an ulterior motive, had a[n] 'expert' report a false allegation of 'abusive use of conduct' . . . and improperly published inadmissible evidence . . . in an attempt to manipulate and . . . alienat[e] the child." Simms further asserts in his reply brief that "[i]f Fish would not of [sic] interfered in Daniel's familial affairs the child would be residing with the paternal family."

As an initial matter, we note that the fitness of both Simms and Fish as custodians for D.R.K. was litigated and decided after a trial in the 2018 nonparent custody proceedings. Simms's assertions both in his complaint and on appeal demonstrate that, ultimately, this claim is an attempt to challenge the outcome of those adversarial proceedings. However, the trial court's findings in the custody proceeding, referenced in Simms's complaint, belie the assertion that Fish's alleged actions were malicious or unjustifiable.

In addition, Finne was given the legal authority to "determine the child's upbringing" when she was granted nonparent custody of D.R.K. in 2015. RCW 26.10.170.[10] This included the authority to introduce Fish to D.R.K. and ask Fish

---

[10] This statute is repealed, effective January 1, 2021. LAWS of 2020, ch. 312, § 905.

for assistance with D.R.K.'s upbringing. Fish was given the same authority when he was granted nonparent custody of D.R.K. starting in June 2018. To the extent that Simms relies on decisions about D.R.K.'s upbringing that were made under this legal authority, Simms's claim fails because those actions were taken under the authority of law and are not unjustifiable. See Babcock, 112 Wn.2d at 108.

Furthermore, Simms has not alleged a causal connection between Fish's conduct and any loss of affection. Simms had a minimal relationship with D.R.K. D.R.K. did not visit Simms between February 2016 and March 2018. But Finne, not Fish, had legal custody of D.R.K. at that time, and Finne was responsible for D.R.K.'s upbringing. Simms alleges in his complaint that Finne did not want anyone from Simms's family to have a relationship with D.R.K. Taking these allegations as true, Finne's actions may have led to a loss of affection toward Simms. However, Simms's allegations do not establish that Fish's own actions caused that loss of affection.

Because Simms did not establish any malicious interference by Fish with Simms's family relationship, the trial court did not err in dismissing this claim.

2

Relying on the same allegations that support his tort claim, Simms alleges that the trial court erred in dismissing his statutory claim for injury of a child under RCW 4.24.010. However, Simms did not establish in his complaint, even if taken as true, that D.R.K. was injured by any of Fish's actions.

RCW 4.24.010 provides parents or legal guardians a cause of action for the injury or death of a child. "A parent or legal guardian who has regularly

contributed to the support of his or her minor child . . . may maintain . . . an action as plaintiff for the injury or death of the child." RCW 4.24.010(1). Contributions that underpin an action can include emotional, psychological, or financial support. See RCW 4.24.010(1); LAWS of 1998, ch. 237, § 1. To redress the child's injury or death, a plaintiff can recover economic damages along with damages for "parental grief and mental anguish." Wilson v. Lund, 80 Wn.2d 91, 99, 491 P.2d 1287 (1971); see also RCW 4.24.010(2) (allowing damages for economic losses and "loss of love and companionship of the child, loss of the child's emotional support, and for injury to or destruction of the parent-child relationship").

Although Simms alleges the destruction of his parent-child relationship and the loss of love and companionship, he does not establish that these losses were the result of any cognizable injury to D.R.K. that was caused by Fish. In his opening brief, Simms avers that he regularly contributed to the support of D.R.K. and "therefore all the elements have been met for a claim of 'Alienation of a Child's Affections.'" In his reply brief, Simms similarly relies on Fish's alleged alienation of D.R.K. from Simms in support of his statutory claim for injury of a child. As noted above, the statutory cause of action for the injury of a child is distinct from the tort claim of alienation of a child's affections. None of Simms's allegations establish that D.R.K. was injured by Fish. Accordingly, Simms does not allege a cognizable claim for injury of a child under RCW 4.04.010, and the trial court did not err in dismissing this claim.

D

Simms next avers that the trial court erred in dismissing his battery claim. Because Fish did not have any contact with Simms, the trial court did not err.

"A 'battery' is an intentional and unpermitted contact with the plaintiff's person." Kumar v. Gate Gourmet Inc., 180 Wn.2d 481, 504, 325 P.3d 193 (2014). A defendant is liable for battery if "(a) 'he [or she] acts intending to cause a harmful or offensive contact with the [plaintiff or a third party], or an imminent apprehension of such contact, and (b) a harmful or offensive contact with the [plaintiff] directly or indirectly results.'" Kumar, 180 Wn.2d at 504 (alterations in original) (quoting RESTATEMENT (SECOND) OF TORTS § 13 (1965)).

Simms does not allege that Fish himself made any harmful or offensive contact with Simms's person. Instead, Simms alleges that D.R.K. "was injured through battery" when Fish allegedly "use[d] his Home to conceal and harbor the child unlawfully" and "negligently use[d] his vehicle to kidnap [D.R.K.] and secrete [D.R.K.] across state lines" without Simms's permission. But a battery claim must rest on "unpermitted contact with *the plaintiff's* person." Kumar, 180 Wn.2d at 504 (emphasis added). Simms does not allege that Fish made any contact with Simms's person, let alone any unpermitted or offensive contact. The trial court thus correctly dismissed Simms's battery claim.[11]

---

[11] Simms does not have standing to bring a battery claim on behalf of D.R.K. Such a claim is a personal asset owned by D.R.K. Because D.R.K. is a minor, such a claim must be brought by D.R.K.'s guardian or a court-appointed guardian ad litem. See RCW 4.08.050; Taylor v. Enumclaw Sch. Dist. No. 216, 132 Wn. App. 688, 694, 133 P.3d 492 (2006) (allowing a parent with legal custody to bring an action on behalf of a minor child as the child's guardian). Simms does not have legal custody of D.R.K. and is thus not D.R.K.'s guardian. Nor was Simms appointed as a guardian ad litem to represent D.R.K.'s interests in this proceeding.

E

Simms further contends that the trial court erred in dismissing his false imprisonment claim. Fish did not falsely imprison Simms, so the trial court did not err in dismissing his claim.

"Violation of one's right of personal liberty or restraint without legal authority are 'the gist' of an action for false imprisonment." Dang v. Ehredt, 95 Wn. App. 670, 685, 977 P.2d 29 (1999). A plaintiff is restrained or imprisoned if the plaintiff "is deprived of either liberty of movement or freedom to remain in the place of [the plaintiff's] lawful choice." Kilcup v. McManus, 64 Wn.2d 771, 777, 394 P.2d 375 (1964). "[S]uch restraint or imprisonment may be accomplished by physical force alone, or by threat of force, or by conduct reasonably implying that force will be used." Kilcup, 64 Wn.2d at 777.

Simms's claim of false imprisonment relies on the same facts he alleges to support his claim of battery, including that Fish allegedly concealed D.R.K.'s location from Simms, kidnapped D.R.K., and harbored D.R.K. without Simms's permission, "thereby injuring [D.R.K.] and [Simms]." Simms does not allege that Fish used or threatened to use any force against Simms himself. Especially given that Simms was incarcerated during the alleged events, Simms could not allege that Fish falsely imprisoned Simms. Therefore, the trial court correctly dismissed Simms's false imprisonment claim.[12]

---

[12] As to any attempt by Simms to assert this claim on behalf of D.R.K., see supra n. 11.

V

Finally, Simms alleges that the trial court erred by denying him leave to amend his complaint for a second time.[13] However, Simms did not comply with the Civil Rules when he sought leave to amend and, regardless, amendment would have been futile. The trial court did not err by denying leave to amend.

CR 15(a) governs amendments to pleadings:

> A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served . . . . Otherwise, a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

"A trial court's denial of a motion for leave to amend will not be disturbed on appeal absent a manifest abuse of discretion or a failure to exercise discretion." Hook v. Lincoln County Noxious Weed Control Bd., 166 Wn. App. 145, 160, 269 P.3d 1056 (2012).

"If a party moves to amend a pleading, a copy of the proposed amended pleading, denominated 'proposed' and unsigned, shall be attached to the motion." CR 15(a). "Both the opposing party and the court have a legitimate need to see the proposed amended pleading in order to address and assess relevant issues of prejudice and futility." Hook, 166 Wn. App. at 159.

---

[13] Simms asserts in passing that the trial court's decision deprived him of constitutional rights. According to Simms, the trial court's decision "is a clear federal and state constitutional violation as [Simms] would be denied Due Process to protect personal rights (See: Wash. State Const. Art. I, § 3; U.S. Const. Amend. XIV, § 1; and RCW 9.92.110)." "Parties raising constitutional issues must present considered arguments." State v. Johnson, 119 Wn.2d 167, 171, 829 P.2d 1082 (1992). Simms does not do so. "'[N]aked castings into the constitutional sea are not sufficient to command judicial consideration and discussion.'" Johnson, 119 Wn.2d at 171 (quoting In re Rosier, 105 Wn.2d 606, 616, 717 P.2d 1353 (1986)).

Here, Simms availed himself of the opportunity to amend his complaint once as a matter of course. When Simms moved to amend his complaint for a second time, he did not provide a proposed amended complaint to the opposing party or to the court. Simms did subsequently attach a proposed second amended complaint to his untimely motion for reconsideration, but at that point his claims had already been dismissed with prejudice. In addition, Simms never properly noted his motion for reconsideration for a hearing, and the trial court never considered it. Simms's failure to provide a proposed amended complaint when he moved to amend his first amended complaint justified the trial court's denial of his request.[14] See Hook, 166 Wn. App. at 160.

The trial court did not abuse its discretion in denying leave to amend.

VI

Simms requests an award of costs under RAP 14.2 for expenses incurred while pursuing this appeal. RAP 14.2 provides for an award of costs "to the party that substantially prevails on review." Because Simms did not prevail on review, he is not entitled to an award of costs.

---

[14] Furthermore, granting Simms leave to amend would have been futile. Simms's claims fail because the law does not provide a remedy for his allegations. Even after reviewing Simms's proposed second amended complaint for hypothetical facts that might support his claims, it is apparent that Simms could not overcome the deficiencies.

Affirmed.

Dwyer, J.

WE CONCUR:

Cox, J.          Appelwick, J.